337 So.2d 1049 (1976)
STATE of Louisiana
v.
Mitchell ALFRED.
No. 57266.
Supreme Court of Louisiana.
May 17, 1976.
On Rehearing September 24, 1976.
*1050 George H. Fust, New Orleans, for defendant-appellee.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellant.
SANDERS, Chief Justice.
The Orleans Parish Grand Jury charged Mitchell Alfred in separate indictments with the first-degree murders of Tobin Underwood, Sr., and Johane McQueen in violation of LSA-R.S. 14:30. Defendant moved to quash the indictments on the ground that he had been denied his right to a speedy trial. The trial court granted the motion; the State timely appealed the quashing of the indictments. The State also gave notice of its intention to apply for writs to seek review of the trial court's ruling, although an application for writs was never filed.
Recently, in State v. James, La., 329 So.2d 713 (1976), we held that when the State seeks review of a final pre-conviction judgment or ruling in a criminal case, application to this Court for a writ under our supervisory jurisdiction is the proper procedure. However, at the time of the State's appeal here, this Court had not as yet determined that Louisiana Code of Criminal Procedure Article 912(B)(1) was ineffective because of its conflict with the 1974 Louisiana Constitution.[1] Therefore, *1051 we shall treat this appeal as an application for supervisory writs.
The following chronology of events, gleaned from the record, is necessary to assess the correctness of the trial court's ruling quashing the indictments based on the denial of the defendant's constitutionally guaranteed right to a speedy trial.
The two murders defendant is alleged to have committed took place on November 3, 1973. The Grand Jury returned indictments charging first-degree murder on July 11, 1974. Continuances in the matter were granted the State on September 20, 1974 and November 19, 1974. Due to the unavailability of a jury, the trial court continued the trial on two dates, January 28, 1975 and January 29, 1975. On March 19, 1975, the Court again granted the State's motion for a continuance. The defense filed motions for a speedy trial on April 4, 1975, and the minute entries reflect that on May 15, 1975, the trial date was set for May 22, 1975. On the day the trial was to begin, the State filed a motion for a continuance, to which the defense objected. The trial court denied the motion for a continuance, and the district attorney nolle prosequied the cases.
On June 5, 1975, the Grand Jury again returned two true bills charging defendant with first degree murder. On July 21, the defense filed motions to quash each indictment; on that date the trial court set July 31, 1975, as a hearing date for the motions and set the trial for August 20, 1975. The motions to quash were heard on the assigned date, July 31, and overruled.
On August 20, 1975, the date set for trial, on joint motion of the State and the defense, the trial date was continued. The two reasons for the requested continuance were listed as (1) the absence of a police officer witness "for both the State and the defendant"; and (2) the absence of the attorney of a witness "expected to implicate himself in a crime." The trial was reassigned for September 29, 1975. On the trial date, the State filed a motion for continuance, and the court denied it. Thereupon, the State again nolle prosequied the two cases and again, for a third time, the Grand Jury returned new indictments on October 9, 1975.
On October 14, 1975, the defendant filed a petition for habeas corpus, alleging that he was being denied a speedy trial. Two days later, he filed a motion to quash the indictments, alleging that he had been denied a speedy trial. A hearing on the motion to quash was held on October 17, 1975, at the conclusion of which, the trial court sustained defendant's motion. It is from this ruling that the State appealed.
The State correctly asserts that under Louisiana Code of Criminal Procedure Article 578 it has three years from the institution of the prosecution in a capital case in which to try the accused. The original indictment was returned on July 11, 1974. On October 17, 1975, the trial court quashed the indictments. The State asserts that it had valid reasons for requesting the several delays in the trial.
Under Louisiana Code of Criminal Procedure Article 691, the "district attorney has the power, in his discretion, to *1052 dismiss an indictment . . . and in order to exercise that power, it is not necessary that he obtain consent of the court." It is clear from Louisiana Code of Criminal Procedure Article 693 that the dismissal by the district attorney of an indictment discharges the particular indictment, and the dismissal is not a bar to a subsequent prosecution.
In State v. Franton, La., 319 So.2d 405 (1975), in defining the district attorney's power to dismiss an indictment, this Court stated:
"In City of Lake Charles v. Anderson, 248 La. 787, 182 So.2d 70 (1966), we held that the entering of a nolle prosequi rests entirely within the discretion of the prosecuting attorney and leave of court is unnecessary. See also State v. Brackin, 113 La. 879, 37 So. 863 (1905); State v. Frazier, 52 La.Ann. 1305, 27 So. 799 (1900); State v. Moise, 48 La.Ann. 109, 18 So. 943 (1895); State v. Bugg, 6, Rob. 63 (1843); Marr's Criminal Jurisprudence of Louisiana, Vol. 1, 2nd Edition, Section 11, p. 35; Wharton's Criminal Law and Procedure (Anderson) Vol. 1, Section 14, p. 19; 22A C.J.S. Criminal Law § 457c, p. 5; 14 Am.Jur., Criminal Law, Section 296, p. 967.
"The prevailing rule is set forth in Marr's Criminal Jurisprudence of Louisiana (1906) `Nolle Prosequi,' Section 466, p. 804, as follows:
"`In all states of a criminal prosecution before a jury is impanelled the prosecuting attorney has an arbitrary control over his indictments, and may enter a nolle prosequi as to them, at pleasure, without the consent of the court or of accused. . . .'"
Thus, unless the defendant has been unconstitutionally denied a speedy trial, the defendant has no valid basis for avoiding trial. According to Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), this case must be decided on its own facts with regard to four factors: (1) length of delay, (2) reasons for delay, (3) the accused's assertion of his right to a speedy trial, and (4) the prejudice to the accused resulting from the delay.
The facts of this case reveal that the delay from the original indictment to the granting of the motion to quash was fifteen months. This lapse of time, per se, is not inordinate. According to Louisiana Code of Criminal Procedure Article 578, the State has three years in which to try the accused after the institution of the prosecution. The trial court observed during the hearing on the motion to quash that the State was blameless in connection with the delays, recognizing that the continuances granted in the early stages of the proceedings were upon the State's showing of good cause. The defendant requested a speedy trial in April, 1975, complying with Barker. However, several months after requesting a speedy trial, the defendant joined in a motion to continue the case. In State v. Bullock, La., 311 So.2d 242 (1975), after considering the defendant's own responsibility for the delay in commencing his trial, we denied his speedy trial contention. Moreover, in the instant case, the defendant makes no showing of prejudice resulting from the delay.
Under all of the circumstances, we conclude that the fifteen-month delay in bringing the case to trial does not constitute a denial of a speedy trial in violation of the constitutional guarantees.
For the reasons assigned, the State's appeal is dismissed. A supervisory writ is granted, and the trial court's ruling quashing the indictments is reversed and set aside. The motion to quash is overruled, and the case is remanded to the Criminal District Court, Parish of Orleans, for further proceedings according to law and consistent with the views herein expressed.
TATE, J., dissents and assigns reasons.
CALOGERO, J., dissents, being of the view that the ruling of the trial judge was correct.
*1053 DENNIS, J., dissents for the reasons assigned by TATE and CALOGERO, JJ.
TATE, Justice (dissenting).
As the trial court properly held, the defendant was denied a speedy trial despite repeated requests therefor. The state cannot evade the constitutional requirement of a speedy trial by nolle prossing the charge each time it is denied a continuance, and then re-indicting. The state cannot, by repeated indictments, maintain the threat of prosecution over an accused, yet refuse to try the charge on its merits. To do so, as the trial court held, violates the accused's right to a speedy trial.

ON REHEARING
SUMMERS, Justice.
In two separate indictments returned on July 11, 1974, Mitchell Alfred was charged by the grand jury of Orleans Parish with the November 3, 1973 first degree murders of Johane McQueen and Tobin Underwood, Sr. La.R.S. 14:30. According to the transcript of a hearing in this matter, the charges also involve burglary and necrophilia.
Alfred was called to the bar on July 17, 1974 and his arraignment was continued by the trial judge "until July 23, 1974 and for a determination of counsel." On July 23 defense counsel was enrolled and pleas of not guilty to each charge were entered. Defense counsel was then granted thirty days to file pleadings.
The State filed a motion for continuance on September 20, 1974, alleging that counsel for a State witness, "who may possibly inculpate himself through his testimony," could not be present. A continuance was granted until November 19, 1974. On that day, on the basis that the "matter requires further investigation prior to prosecution", the State again moved for a continuance. This too was granted until the case was reset by the office of the District Attorney.
In the meantime, the case was set for trial on January 28, 1975, at which time it was continued by the court "due to no jury", and the court set a "status hearing" for January 29. On that day the court again continued the trial until March 19, 1975, "due to no jury being available."
On the appointed day, March 19, 1975, the State moved for a continuance for the reason that "Detective John Kastner, a crucial State witness is unavailable due to his being bedridden as the result of gunshot wounds." Continuance was granted until the case was reset. Later, the trial judge observed that all continuances in these "early stages of the proceedings" were for "good cause." Defense counsel acknowledged this to be "correct."
Then, on April 3, 1975, defense counsel filed a motion for a speedy trial on the grounds that Alfred had been incarcerated in parish prison for eight months, the proof against him was not evident, nor the presumption of guilt against him great, and he was innocent of the crimes charged.
With the cases in this posture, on May 15, 1975 the court set both cases for trial on May 22, 1975. And, when the court met on that day, the State again moved for a continuance. This time it was alleged that Officer Kastner was in the hospital; and an assistant district attorney, who was presumably involved in the case, was involved in a trial in another section of the court. Defense counsel objected, and this continuance was denied; whereupon, the State entered a nolle prosequi as to both cases. However, defendant was again arrested and held in custody pending renewed charges.
Alfred was indicted by the grand jury for the second time on June 5, 1975 for the first degree murders of McQueen and Underwood. The minutes of court for June 16 and July 2, 1975 are not available. However, the record shows that on July 8, Alfred was arraigned on the new charges, pled not guilty and was granted fifteen days to file pleadings and to determine counsel.
*1054 Alfred was in court on July 14, and, although his attorney had been notified, he did not appear. The court, therefore, continued the hearing until July 21. At that time defense counsel filed motions to quash each case alleging double jeopardy. These were set for hearing on July 31, and the trial of both cases was then set for August 20.
When the court met on July 31 it considered the motions to quash founded upon pleas of double jeopardy. After the hearing the motions were denied without objection.
On the day set for trialAugust 20 a joint motion for continuance was filed by the State and defendant, alleging that Detective Charles Faught, a witness for the State and defendant, and counsel for David Dexter, a State witness, were unavailable. Because of this motion, the trial was continued to September 29, 1975.
A motion for continuance was filed by the State on September 29, the day scheduled for trial, in which the State represented that its principal witness had recently escaped from parish prison, and the State's witness Charles Faught was out of State and had not been served with a subpoena. This continuance was denied, and, for the second time, the State nolle prossed the charges.
Indictments with identical charges were again returned by the grand jury on October 9, 1975. As a result defense counsel filed an application for habeas corpus on October 14, which was set for hearing on October 16. Alleging that he had been denied a speedy trial, defendant filed motions to quash on October 16. These were set for the next day and sustained.
In sustaining the motions, the trial judge recognized that he had no authority to question the district attorney's right to nolle prosse or the grand jury's authority to reindict defendant. At the same time, the trial judge announced, "without putting any blame whatsoever on the State, the Court understands the State's position in this matter." He also found that "Witnesses have been unavailable for seventeen months."
On the State's application, writs were granted under this Court's supervisory jurisdiction to review this ruling. After consideration, the order sustaining the speedy trial motions was reversed, and the case was remanded for further proceedings. A rehearing was granted, however, on defendant's application.
The right to a speedy trial is guaranteed by the Federal and State Constitutions. U.S.Const. amend. VI; La.Const. art. I, § 16 (1974); La.Code Crim.Pro. art. 701. It is a fundamental right under the Federal Constitution which is imposed by the Due Process Clause of the Fourteenth Amendment on the States. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L. Ed.2d 1 (1967); State v. Gladden, 260 La. 735, 257 So.2d 388 (1972).
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court first formulated the criteria by which the right to a speedy trial should be judged. There the court held that a claim that a defendant has been denied his right to a speedy trial is subject to a balancing test, in which is weighed the conduct of both the prosecution and the defendant. In determining whether a defendant's rights to a speedy trial have been denied, courts should consider such factors as 1) length of the delay, 2) reason for the delay, 3) the defendant's assertion or nonassertion of his right, and 4) prejudice to the defendant resulting from the delay.

Length of Delay
Although it is alleged in the indictment that the offenses occurred on November 3, 1973, the record does not establish when the accused was arrested. Louisiana law and recent interpretations of the federal constitution recognize that the guarantee *1055 of a speedy trial does not become applicable until the defendant in some way becomes an accused, which in most cases is the day of arrest. Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed. 2d 205 (1975); Barker v. Wingo, supra; United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Stetson, 317 So.2d 172 (La.1975); State v. Moore, 300 So.2d 492 (La.1974); State v. Gladden, 260 La. 735, 257 So.2d 388 (1972); La.Code Crim.Pro. art. 578 (Comments).
In the absence of a showing that the defendant became an accused earlier, the indictment must be considered as the accusation for the purpose of computing the delay applicable to the claim of denial of the right to a speedy trial. Under this formula the delay commences on July 11, 1974, and continues to the date when defendant's right to a speedy trial was upheld, October 17, 1975, a total of fifteen months and six days.
Taken alone this delay is not inordinate under either federal standards or the decisions of this Court. Barker v. Wingo, supra, a case strikingly similar to the case at bar, involved a delay exceeding five years. The passage of nineteen months between an arrest and a second indictment does not in itself demonstrate a violation of the Sixth Amendment guarantee of a speedy trial, when the defendant was promptly indicted and convicted, subsequently obtained the vacation of his conviction, and was then immediately rearrested and reindicted. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).
In State v. Gladden, supra, a delay of two years was not considered excessive. A delay of one year and nine months did not result in the denial of a speedy trial in State v. Roddy, 263 La. 1064, 270 So.2d 508 (1972), and a ten-month delay between arrest and trial was conceded to be reasonable in State v. Harris, 297 So.2d 431 (La. 1974). Delays occasioned by reassignments at the State's request resulted in twenty-six months delay from the time of indictment in State v. Moore, 300 So.2d 492 (La. 1974); nevertheless, that circumstance alone did not result in the denial of a speedy trial.
Where the defendant was convicted of murder in 1966 and sentenced to death, the death penalty set aside in 1971 and a new trial ordered which did not commence until 1974, the resulting eight-year delay did not deny the defendant a speedy trial as this Court held in State v. Bullock, 311 So.2d 242 (La.1975).
A period of exactly one year from the date the offense was committed to date of trial did not result in a delay which would entitle the defendant to have his conviction set aside in State v. Jones, 320 So.2d 182 (La.1975). A prosecution instituted in 1971 in State v. Howard, 325 So.2d 812 (La. 1976), where the trial took place more than three years thereafter, was held not to deprive a defendant of a speedy trial.
Delay of almost fifteen months between arrest and trial was held to be "neither inordinate nor unusual" in State v. Brown, 326 So.2d 839 (La.1976), while a two-year delay in State ex rel. Eames v. Amiss, 288 So.2d 316 (La.1974), did not result in the discharge of the defendant. See also State v. Dupree, 256 La. 146, 235 So.2d 408 (1970).
Thus, by repeated decisions applying the tests set forth in Barker v. Wingo this Court has refused to declare that a speedy trial was denied. These cases involved considerable delays, often more lengthy than the fifteen months involved here. It is fair to conclude from these pronouncements, in the absence of unusual circumstances, that a fifteen-month delay is "neither inordinate nor unusual." State v. Brown, supra, in a prosecution involving a double murder.
While it is elementary that legislative acts may not impair constitutional guarantees, it is worthy to note that in a *1056 capital case Article 578 of the Code of Criminal Procedure allows a delay of three years from the date of institution of the prosecution within which the trial may be commenced. Such an enactment is a recognition by the legislature that the time limitation thereby ordained is reasonable and acceptable under ordinary circumstances. Statutes of limitation are the primary guarantees against inordinate delays between accusation and trial. La.Code Crim. Pro. arts. 578-82; 18 U.S.C.A. § 3281-82; United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); State v. Howard, 325 So.2d 812 (La.1976); State v. Stetson, 317 So.2d 172 (La.1975); State v. Gladden, 260 La. 735, 257 So.2d 388 (1972). These statutes represent a legislative assessment of relative interests of the State and defendant in administering and receiving justice, and they should be considered by the courts. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L. Ed.2d 468 (1971); State v. Theard, 203 La. 1026, 14 So.2d 824 (1943). Judged by this legislative criterion, the delay in the instant case is neither inordinate nor unreasonable.

Reason for the delay
From the time of the indictment on July 11, 1974, until the defendant filed a motion for a speedy trial on April 3, 1975, no objection was recorded by defendant to any of the continuances during this nine-month period. To the contrary, defense counsel acknowledged that this delay was for "good cause". It is evident, moreover, that some of the delay occurring during this interval was not attributable to the State. Some of the delay, for example thirty days for file pleadings, was granted by the trial judge to defendant. Another delay, almost two months, transpired because no jury was available; continuance was granted by the trial judge, not due to any cause attributable to the prosecutor.
Even after defense counsel filed his speedy trial motion, on April 3, 1975, he did not urge its adjudication. Rather, he later joined in a motion to continue the case on August 20, 1975. As a result of this motion for continuance the trial date was fixed for September 29, 1975 without defense objection. This is another delay of thirty-nine days which is for good cause, a delay to which defendant subscribed. Significantly, too, this delay terminated within eighteen days of the date on which the trial judge sustained the defendant's claim that he had been denied a speedy trial.
Furthermore, the trial judge "without putting any blame whatsoever on the State," declared when he granted the motion to quash that he understood the State's position in the matter. He also found that witnesses were unavailable for seventeen months. Notwithstanding these pronouncements, and in spite of the fact that fifteen months has not been considered an inordinate delay in such a prosecution, he ordered the indictments quashed.
The per curiam of the trial judge assigned additional reasons which apparently influenced his action. While recognizing the District Attorney's right to nolle prosse, he said that "the district attorney should not be allowed to abridge a defendant's right to a speedy trial by means of constant nolle prosequies and re-indictments." However, this reason overlooks the fact that until the defense filed its speedy trial motion on April 3, 1975 and the trial judge first denied a continuance to the State on May 22, 1975, all delays were acknowledged to be for good cause, and a substantial segment of that delay was due to continuances granted by the court for the defendant's benefit and because juries were unavailable. Until that time, the defendant had recorded no objection. In addition, the trial judge recognized the absence of State witnesses. Under these circumstances the court's refusal to grant more time compelled the District Attorney to avail himself of the authority he undoubtedly possessed to nolle prosse and again present the case to the grand jury for reindictment. It may be that he gained time by this tactic, but a recognition of this fact does not detract *1057 from the realization that a prosecution for a double murder was involved, and it was not unreasonable for the prosecutor to avail himself of all legitimate means to gain adequate time to marshal the proof needed to properly present its case. That was his responsibility. To do less would not serve the State's interest. His plenary power in this regard is not subject to question, and, under those circumstances, he is entitled to the presumption that he exercised this power for a proper and lawful purpose in keeping with his duty as a public official. La.R.S. 15:432.
In summary, there were a number of reasons for the delay: Time was needed for the defense to file pleadings, to accommodate the trial date to the availability of a jury panel in a crowded docket, to enable the district attorney to further investigate the case, and to compel the attendance of absent witnesses.
None of these delays were extraordinary or capricious; none were deliberate on the part of the District Attorney, designed to hamper the defense; none were due to negligence on the part of the court, the prosecutor or others charged with the responsibility of providing a speedy trial; all were legitimate and recognized grounds for continuances. In some cases delays are demanded by the nature of the situations presented. No hard and fast time limit can be fixed for all cases; each must be decided on its own facts and circumstances.

Defendant's Assertion of the Right
Not until April 3, 1975 did defendant assert the right to a speedy trial by filing a written motion to that effect. The motion, however, did not allege grounds for the demand or set forth in any respect the prejudice to the defendant which had occurred or which might occur by further delays. Moreover, the defendant made no effort to set the motion for trial or to otherwise obtain a ruling. To the contrary, despite the dormant motion for a speedy trial, defendant joined in a motion for continuance, more than four months thereafter because one of the principal witnesses for the defense could not attend the trial.
Thereafter, on October 17, 1975 defendant filed a second motion for a speedy trial. This motion was acted upon forthwith with the result that the indictments against defendant were quashed.

Prejudice to the Defendant
None is alleged. None is shown. There is, of course, some prejudice inherent in all accusations of crime, arrests and incarcerations. The anxiety and concern suffered by the accused and the disruption of his family life by the charge and incarceration are factors to be considered. Loss of his job is another. But defendant has not alleged disruption of his family life, and the record does not shed light on whether he had a job. Deprivation of liberty which results from incarceration is always prejudicial. But this prejudice, like other, is a necessary consequence of any valid criminal charge, especially where the accusation involves first degree murder, a non-bailable offense.
The amorphous quality of the right to a speedy trial leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because, unlike the exclusionary rule or the reversal for a new trial, it means that a defendant who may be guilty of a serious crime, or two as in this case, will go free without having been tried. Overzealous application of this remedy would infringe "the societal interest in trying people accused of crime, rather than granting them immunization because of legal error . . . ." United States v. Ewell, 383 U.S. 116, 86 S. Ct. 773, 15 L.Ed.2d 627 (1966), White, J. Barring extraordinary circumstances, courts should be reluctant indeed to rule that a defendant has been denied a speedy trial. In none of this Court's decisions since Barker v. Wingo has a defendant been released for this reason.
*1058 The delay that can be tolerated for an ordinary street crime is considerably less than for a serious double murder. In any case, however, a valid reason, such as a missing witness, should serve to justify appropriate delays.
The most serious basis for a complaint by the accused that he has been denied a speedy trial is the fact that he has been prejudiced thereby. And the most persuasive argument to support a claim of prejudice is the fact that the defense has been impaired. The defense is principally impaired by the death or disappearance of its witnesses during the delay. But there is no claim here that this has happened. This delay was not unusual considering the nature of the case and the reasons assigned for continuances.
The action of the District Attorney nolle prossing the charges is authorized and nothing in this record indicated that this was done to hamper the defense. It was resorted to, obviously, to preserve the prosecution for a time when the State was prepared.
For the reasons assigned our judgment on original hearing is reinstated and affirmed.
TATE, J., dissents and assigns written reasons.
DIXON, J., dissents.
CALOGERO, J., dissents for the reasons assigned by TATE, J.
TATE, Justice (dissenting).
As the trial court properly held, the defendant was denied a speedy trial despite repeated requests therefor.
The state cannot evade the constitutional requirement of a speedy trial by nolle prossing the charge each time it is denied a continuance, and then re-indicting. The state cannot, by repeated indictments, maintain the threat of prosecution over an accused, yet refuse to try the charge on its merits. To do so, as the trial court held, violates the accused's right to a speedy trial.
The state may not indefinitely postpone trial on a charge without violating the speedy-trial rights of an accused under the federal constitution. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed. 2d 1 (1967). Likewise, such prosecutorial conduct offends the speedy-trial guarantee provided by our state constitution. Louisiana Constitution of 1974, Article I, Section 16.
NOTES
[1] Article 912(B) of the Louisiana Code of Criminal Procedure provides in pertinent part:

"B. The state cannot appeal from a verdict of acquittal. Adverse judgments or rulings from which the state may appeal include, but are not limited to, judgments or rulings on:
(1) A motion to quash an indictment or any count thereof;
(2) A plea of time limitation;
(3) A plea of double jeopardy;
(4) A motion in arrest of judgment;
(5) A motion to change the venue;
(6) A motion to recuse; and
(7) Repealed."
Article V, Section 5(D) and (E) of the Louisiana Constitution of 1974 provides in pertinent part:
"(D) Appellant Jurisdiction. In addition to other appeal provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional; (2) the defendant has been convicted of a felony or fine exceeding five hundred dollars or imprisonment exceeding six months actually has been imposed.
"(E) Other Criminal Cases; Review. In all criminal cases not provided in Paragraph (D)(2) of this Section, a defendant has a right of appeal or review, as provided by law." (Emphasis added.)