|2WEIMER, Judge.
 

 This matter involves a determination of when a defendant’s constitutional right to a speedy trial is violated.
 

 Defendant, Gary Cyrex, was initially charged by grand jury indictment, in Ascension Parish under docket number 7120 of the Twenty-Third Judicial District Court, with indecent behavior with a juvenile in violation of LSA-R.S. 14:81. Following the recusal of the Office of District Attorney for the Twenty-Third Judicial District (hereinafter referred to as the district attorney), the State Attorney General’s Office assumed the role of prosecutor and obtained a new grand jury indictment in Iberville Parish charging defendant with the same offense under docket number 1818-94 of the Eighteenth Judicial District Court. After the original indictment was dismissed by the prosecution, the district court in the Eighteenth Judicial District granted a defense motion to quash the new indictment, based on the violation of defendant’s constitutional right to a speedy trial. The state appeals the adverse judgment.
 

 FACTS AND PROCEDURAL HISTORY
 

 This case has a complicated and tortured procedural history. The alleged offense occurred on or about May 15, 1993. At that time, defendant was the band director for a middle school in Ascension Parish and was accompanying the alleged victim (a sixth grade female student at the school), and other students and adults on a bus returning home from a school trip to Astroworld in Houston, Texas. Defendant was arrested for the alleged offense on September 22,1993.
 

 The original indictment in Ascension Parish was returned on October 26, 1993. Defendant entered a plea of not guilty to the charge on November 8, 1993. On November 23, 1993, the defense filed various pretrial motions, including a motion to quash the original indictment and to re-cuse the district attorney, motion for production of the child (i.e., the alleged victim) for ¡.-¡psychological and psychiatric examinations, motion for a preliminary examination, motion for disclosure of impeaching information, and a motion for speedy trial. On December 17, 1993, the district attorney filed responses to defendant’s pretrial motions and a hearing was conducted on the motions. During the December 17 hearing, the district court granted the motion for production of the child for psychological and psychiatric examinations; and, on defense counsel’s motion, in which the state expressed agreement, the district court granted a continuance regarding the defense motion to quash the indictment and recuse the district attorney and motion for preliminary examination. The state filed an application for supervisory writs with this Court under our docket number 93 KW 2348 seeking review of the district court ruling ordering the production of the alleged victim for psychological and psychiatric examinations. On January 28, 1994, we granted the state’s application. In vacating the erroneous ruling of the lower court, we specifically noted that defendant has no right to force the alleged victim to undergo any such examinations. Defendant applied for supervisory review of our decision with the Louisiana Supreme Court, which denied the application on April 22, 1994.
 
 See State v. Cyrex,
 
 94-0507 (La.4/22/94), 637 So.2d 157.
 

 On July 27, 1994, defendant filed a motion to schedule a status conference, and the district court signed an order scheduling the status conference for August 8, 1994. Defendant filed another motion, on August 18, 1994, to recuse the district
 
 *3
 
 attorney based on a conflict of interest and/or an appearance of impropriety, which motion was granted by the district court that same day. By letter dated September 1, 1994, the State Attorney General’s Office notified the Ascension Parish Clerk of Court’s Office of the appointment of Assistant Attorneys General Julie E. Cullen and Donnie Rowan as prosecutors in the instant case. Pursuant to an October 13, 1994, defense motion, the district court issued an order for an October 24, 1994, hearing date for motions and a pretrial status conference. On October 24, the state and the defense jointly moved for a continuance of the scheduled pretrial conference, which was reset for November 28, 1994. At a hearing on November 28, prosecutor Cullen indicated to the district court that she “would like to get something settled on this before we pick a trial date,” to which defense counsel expressed his agreement. Defense counsel then orally moved to allow defense experts to review a videotaped statement of the alleged victim. The district court granted the motion, and the state applied for supervisory relief with this court seeking reversal of the ruling. We granted the state’s application on February 10, 1995, under our docket number 95 KW 0127, as follows:
 

 WRIT GRANTED WITH ORDER. In a criminal prosecution, when the state intends to offer as evidence a copy of a videotaped oral -statement of a child made pursuant to the provisions of La. R.S. 15:440.5, defendant may be provided a copy of the videotape if the court determines it necessary to present a proper defense. If the court orders the defendant be provided a copy of the videotaped statement, only the attorney and the defendant shall be permitted to view the tape and no copies shall be made by any person. The copy shall be returned to the court immediately upon conclusion of the case. Any violation of this Subsection shall be punished as contempt of court. La. R.S. 15:440.5(C). Accordingly, the district court’s order dated November 28, 1994, allowing defense counsel to show the videotaped statement of the child-victim to his expert witnesses is hereby vacated and this matter is remanded to the district court to enter judgment accordingly.
 

 Additionally, the district court is instructed to determine whether any copy or copies of the tape have been made and whether any person or persons other than the defendant and his attorney have viewed the tape, and if so, judge whether such acts constitute contempt of court under this provision.
 

 Prior to our granting this application, defendant was indicted in Iberville Parish under the new indictment filed on December 1, 1994. On January 23, 1995, defendant filed in the Twenty-Third Judicial District Court a motion to determine venue, which was set for a January 23, 1995, hearing. The scheduled hearing was continued to February 27, 1995, due to a death in the family of prosecutor Cullen. On February 23, 1995, the state dismissed the original indictment that had been returned by the grand jury in Ascension Parish. On February 27, 1995, the district court in the Twenty-Third Judicial | .(District conducted the scheduled hearing on the motion to determine venue. At the hearing, the district court agreed with the state that the Twenty-Third Judicial District Court no longer had jurisdiction, because of the dismissal of the original indictment and filing of the new indictment in the Eighteenth Judicial District Court.
 

 On May 1,1995, defendant entered a not guilty plea to the new indictment and elected a trial by jury. Furthermore, on motion of the prosecutor, a hearing on motions was set for July 14, 1995, and trial was set for August 15, 1995. Defendant filed various pretrial motions on May 16, 1995, including a motion to determine venue and a motion for speedy trial. On June 28, 1995, the state filed responses to the defense pretrial motions. On July 13, 1995, the motions hearing was continued on joint motion of the state and defendant.
 
 *4
 
 The dates for the motions hearing and trial were reset for October 11, 1995, and November 6, 1995. On the day of the motions hearing, defendant filed additional motions, including a motion to quash the indictment alternatively based on the state’s failure to comply with the laws of venue and prosecutorial misconduct. After two witnesses testified, the October 11 hearing was recessed until November 3, 1995, to facilitate the presentation of additional testimony by the defense. Additional testimony was elicited at the November 3 hearing. During the hearing, defendant moved, without objection from the state, to continue the trial which had been set for November 6, 1995. Defense counsel also indicated another motion hearing was needed, and the court set the hearing for January 5, 1996. The district court issued a ruling on January 10, 1996, deeming venue to be improper in Iberville Parish. The state sought review of the ruling with this court. Under our docket number 96 KW 0616, we granted the state’s application on June 28, 1996, as follows:
 

 WRIT GRANTED. The district court’s determination that both Ascension and Iberville Parish are courts of proper venue was correct. There has been no showing the defendant cannot receive a fair and impartial trial in Iber-ville Parish. Accordingly, the ruling of the district court deeming venue | ^improper in Iberville Parish hereby is reversed and this matter is remanded to the court for further proceedings.
 
 See
 
 La.Code Crim. P. arts. 62, 612, and 621;
 
 see also State v. Norwood,
 
 351 So.2d 122 (1977).
 

 On August 13, 1996, on motion of the state, a trial date was set for October 21, 1996. Both the state and defendant are in agreement in brief that trial was not held
 
 on
 
 October 21 and that other trial dates (February 18, 1997, and April 14, 1997) were set on motion of the state without trial occurring on either of those dates or on August 18, 1997 (the last date set for trial), i.e., the day before the district court granted the motion to quash. Both parties further agree in brief that neither party moved for a continuance of trial on October 21, February 18, or April 14. The defendant asserts that the trial did not occur on those dates because it was not set on the district court’s priority docket.
 
 [1]
 
 In brief, the state asserts that the prosecutor was able to secure “priority” for the August 18, 1997, scheduled trial date. The transcript of the proceedings of August 18, 1997, reflects that defendant was (as of that date) electing a bench trial and that the district court was prepared to conduct the trial beginning on the morning of the following day. The transcript further reveals that prosecutor Cullen indicated she anticipated it would take her at least the morning of August 19 to put on her casein-chief.
 

 The district court entertained arguments by the state and the defense on August 18 and 19, 1997, which primarily dealt with the defendant’s claim that he was being deprived of his right to a speedy trial. At the conclusion of arguments and after reviewing the circumstances of the case under the criteria of
 
 Barker v. Wingo,
 
 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the |7 Pistrict court granted defendant’s motion to quash the new indictment based on the denial of defendant’s constitutional right to a speedy trial.
 
 [2]
 

 
 *5
 

 RIGHT TO A SPEEDY TRIAL
 

 The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, § 16, of our state constitution.
 
 State v. Collins,
 
 546 So.2d 1246, 1254 (La.App. 1 Cir.1989),
 
 writ denied,
 
 558 So.2d 599 (1990). The right attaches when an individual becomes an accused whether by formal indictment or bill of information or by arrest and actual restraint.
 
 State v. Wilson,
 
 95-0613, p. 3 (La.App. 1 Cir. 4/4/96), 672 So.2d 716, 718. In determining whether an individual’s constitutional right to a speedy trial has been violated, no fixed time period is determinative. Rather, a balancing process is utilized in which the conduct of both the prosecution and the defense is viewed in light of four factors: 1) the length of the delay; 2) the reason for the delay; 3) the defendant’s assertion of his right; and 4) the prejudice to the defendant.
 
 Barker,
 
 407 U.S. at 530-532, 92 S.Ct. at 2191-2193;
 
 State v. Lee,
 
 577 So.2d 134, 138 (La.App. 1 Cir.),
 
 writ denied,
 
 580 So.2d 667 (1991). The length of the delay serves as a “triggering mechanism.” |8Unless there is a delay which is “presumptively prejudicial,” there is no necessity for further inquiry into the other
 
 Barker
 
 factors. If the delay is presumptively prejudicial, however, the court must then balance the delay together with the remaining three factors.
 
 State v. Willis,
 
 94-0056, p. 4 (La.App. 1 Cir. 3/3/95), 652 So.2d 586, 588.
 

 In this case, the delay between defendant’s September 22, 1993, arrest and the last scheduled trial date of August 18, 1997, was almost forty-seven months.
 
 [3]
 
 We believe this delay was of sufficient duration, given the facts herein, to trigger further inquiry into the remaining
 
 Barker
 
 factors. However, it has been emphasized that this conclusion is presumptive only, and does not warrant an immediate conclusion that defendant has been denied his right to a speedy trial.
 
 State v. Willis, supra.
 
 The vast majority of the period between defendant’s September 22, 1993, arrest and June 28, 1996, the date we granted the state’s writ application in 96 KW 0616, was spent litigating defendant’s pretrial motions. Approximately one year of that period of time was consumed by the state seeking and obtaining review by this court under our supervisory jurisdiction of the three district court interlocutory rulings previously referenced, with the state successfully having an erroneous ruling reversed by this court in each instance. Under
 
 Barker,
 
 delays in bringing the case to trial caused by the state’s applications for supervisory review of interlocutory rulings
 
 *6
 
 may be weighed in determining whether or not a defendant has suffered a violation of his right to a speedy trial.
 
 See United States v. Loud Hawk,
 
 474 U.S. 302, 316, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986). It is clear in this case, however, that defendant has failed to show a reason for according these delays any effective weight towards the denial of his Rspeedy trial claim. There is no showing of bad faith or dilatory purpose on the part of the state as to the writ applications. The state’s position in each of the three referenced writ applications was correct, and our decisions granting reversals in the applications are prima facie evidence of the reasonableness of the state’s action.
 
 See United States v. Loud Hawk,
 
 474 U.S. at 316, 106 S.Ct. at 656.
 
 [4]
 
 It is unfair for the defense to complain that the right to a speedy trial was violated when substantial time was consumed having erroneous trial court rulings reviewed.
 

 The delays following the June 28, 1996, writ grant in 96 KW 0616, when successive trial settings on October 21, 1996, February 18, 1997, and April 14, 1997, all passed without trial taking place, were apparently due to overcrowded trial dockets rather than through any fault of the state. The case was not on the priority docket in Iberville, but the defendant never objected to the case being passed on the three dates nor urged his motion for speedy trial. The defendant allowed these dates to pass without complaint reflected in the record. Additionally, the matter was originally set for jury trial. The defendant attempted to waive trial by jury just before the last scheduled trial date.
 

 Defendant did file a motion for speedy trial in both Ascension Parish and Iberville Parish. However, these motions were filed almost immediately after each of the
 

 indictments and not persistently urged. There was no specific showing that the state deliberately postponed the trial of defendant. Counsel for the Attorney General’s office stated that the second indictment was brought in Iberville Parish because the alleged crime probably occurred in Iberville or West Baton Rouge Parish, rather than Ascension Parish — although the state |inadmitted it was uncertain where the alleged crime actually occurred. Venue was proper in any of these parishes.
 
 [5]
 

 This court has given very careful consideration to defense counsel’s argument that the delay was due in part to the second indictment in Iberville Parish and that the state was in bad faith in bringing that indictment. The second indictment in another venue is a significant factor to be carefully weighed in determining whether the right to a speedy trial was violated based on the facts of this case.
 
 See U.S. v. Loud Hawk,
 
 474 U.S. at 316, 106 S.Ct. at 656. However, this court is not prepared to grant the motion to quash on that ground alone. We find that the delay which the state may arguably be accountable for in this matter does not rise to the level of bad faith sufficient to warrant the extreme measure of granting the motion to quash. The Attorney General, when substituting for a District Attorney in a case, “has entire charge and control of every criminal prosecution instituted or pending” and “determines whom, when, and how he shall prosecute.”
 
 See
 
 LSA-C.Cr.P. arts. 61-62 and La. Const. art. IV, § 8.
 

 After the second indictment was filed in Iberville, the record does not reflect the state delayed the case. Much of the delay was attributable to defense motions and appellate review of an erroneous trial
 
 *7
 
 court ruling on venue. The case was set for trial on August 15, 1995, following the December 1, 1994, Iberville indictment. As indicated, the case was set for trial on three occasions thereafter, but passed without the defendant objecting or asserting his motion for speedy trial.
 

 Furthermore, although defendant generally asserts that he was prejudiced by the delay, he has failed to substantiate his assertion in the ^proceedings below. In
 
 Barker v. Wingo, supra,
 
 the court indicated the three areas of inquiry in the assessment of prejudice are:
 

 1. pretrial incarceration;
 

 2. anxiety and concern of the accused; and
 

 3. impairment of the defense.
 

 In this matter, the defendant has not been incarcerated. Obviously, he has suffered anxiety and concern, especially given the fact he worked with youth and the charge consists of molestation of a juvenile. He has had to live under a cloud of suspicion and endure rumor and innuendo. However, the trial judge who granted the motion to quash noted the limited prejudice suffered by the defendant.
 
 [6]
 

 The record does not reflect any impairment of defendant’s ability to prepare his defense, the most serious form of prejudice normally experienced by an accused whose trial is delayed.
 
 See State v. James,
 
 459 So.2d 1299, 1309 (La.App. 1 Cir.1984),
 
 writ denied,
 
 463 So.2d 600 (1985). Although the record reflects that the defendant’s brother, who served as one his attorneys, passed away, his brother was not a witness and the defendant has had a vigorous defense.
 

 As stated in
 
 State v. Wilson,
 
 95-0613 at pp. 6-7, 672 So.2d at 720:
 

 Despite the extraordinary delay in this prosecution, the balancing of interests in these cases cannot overlook the serious consequences of the remedy of a violation of the right to a speedy trial: the “unsatisfactorily severe remedy of dismissal” of the charges when the right has been deprived.
 
 State v. Alfred,
 
 337 So.2d 1049, 1057 (La.1976). In declining to find a deprivation of the right to a speedy trial, the
 
 Alfred
 
 court observed:
 

 ‘Overzealous application of this remedy would infringe “the societal interest in trying people accused of crime, rather than granting them immunization because of legal error.... ” Barring extraordinary circumstances, courts should be reluctant indeed to rule that a defendant has been denied a speedy trial.’
 
 Alfred,
 
 337 So.2d at 1057. (citations omitted)
 

 LaThe learned trial judge conscientiously grappled with making a difficult decision. However, after carefully undertaking the requisite balancing process in light of the factors identified in
 
 Barker v. Wingo,
 
 together with other relevant circumstances peculiar to this case, we find there has been no deprivation of defendant’s constitutional right to a speedy trial. Consequently, this court is compelled to reverse the decision granting the motion to quash.
 

 Therefore, for the above stated reasons, we reverse the district court judgment granting the motion to quash the new indictment filed on December 1, 1994. The case is remanded to the district court and it is ordered that a pretrial conference to establish a trial date be scheduled immediately. The matter is to be placed on a priority docket for trial.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 .
 
 See
 
 Rules of the Eighteenth Judicial District Court, Rules of Practice and Procedure, Rule 8.
 

 [2]
 

 . The district court, in its concluding remarks in support of its ruling granting the motion to quash, made reference to LSA-C.Cr.P. art. 578, which requires a trial for indecent behavior with a juvenile (a non-capital felony) to begin within two years from the date of institution of prosecution, apparently as a basis for the ruling. However, insofar as the district court may have relied on the expiration of the article 578 two-year period to support its ruling, for reasons to follow, any such reliance clearly would have been misplaced. Herein, the prosecution was instituted on October 26, 1993, when the original indictment was filed.
 
 See
 
 LSA-C.Cr.P. art. 934(7). Slightly less than forty-six months elapsed
 
 *5
 
 from that date until the scheduled trial date in August 1997 when the district court granted the motion to quash the new indictment. However, when a defendant files a motion to quash or other preliminary plea, the running of the period of limitation provided in article 578 is suspended until the court rules on the motion or plea; hut in no case shall the state have less than one year after the ruling to commence the trial.
 
 See
 
 LSA-C.Cr.P. art. 580. Based on the record before us, a motion to quash and motion for preliminary examination, which were filed in Ascension Parish on November 23, 1993, and a motion to determine venue filed in Ascension Parish on January 23, 1995, were still pending on February 23, 1995, the date of dismissal of the original indictment; and various other pretrial motions filed by defendant beginning on May 1, 1995, following the filing of the new indictment on December 1, 1994, were pending in Iberville Parish over the entire period from May 1, 1995, until August 19, 1997, when the district court in the Eighteenth Judicial District granted the motion to quash. Thus, only approximately three months of the period of slightly less than forty-six months from the filing of the original indictment until the August 18, 1997, scheduled trial date was not suspended due to the pendency of pretrial motions. Consequently, the state had about twenty-one months of the article 578 two-year period remaining to commence trial.
 

 [3]
 

 . Notwithstanding the state's assertion to the contrary, the period between defendant’s arrest and release on bail and the return of the original indictment against defendant weighs toward his speedy trial claim and necessitates inclusion of that period in the balancing analysis.
 
 See United States v. Loud Hawk,
 
 474 U.S. 302, 311 n. 13, 106 S.Ct. 648, 654 n. 13, 88 L.Ed.2d 640 (1986).
 

 [4]
 

 . Thus, the district court’s reliance on
 
 State v. Joseph,
 
 93-2734 (La.6/3/94), 637 So.2d 1032, in determining delays due to appellate review of erroneous trial court decisions should be counted against the state, is misplaced. Additionally,
 
 State v. Joseph, supra,
 
 is inapplicable because there the prosecution exceeded the time limits imposed by LSA-C.Cr.P. art. 578 and there was no suspension based on LSA-C.Cr.P. art. 580.
 

 [5]
 

 . LSA-C.Cr.P. art. 612 provides that where a crime occurs on a vehicle, venue is proper in any parish through which the vehicle passes.
 

 [6]
 

 . The trial judge in oral reasons for judgment stated the defendant "incurred some prejudice by the lapse of time although it is the weakest of the four prongs of the test under
 
 Barker v. Wingo."