# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-437 consolidated with 03-438

**STATE OF LOUISIANA**

**VERSUS**

**SIGMUND L. VAN DYKE**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 17068-96
HONORABLE ALCIDE JOSEPH GRAY, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT
JUDGE**

**********

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**REVERSED AND REMANDED.**

**Clive Adrian Stafford-Smith**
**Louisiana Crisis Assistance Center**
**636 Baronne St.**
**New Orleans, LA 70113**
**(504) 558-9867**
**Counsel for Defendant/Appellee:**
      **Sigmund L. Van Dyke**

**Carla Sue Sigler**
**Assistant District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602**
**(337) 437-3400**
**Counsel for Plaintiff/Appellant:**
      **State of Louisiana**

**PICKETT, Judge.**

## FACTS

In October of 1996, the defendant, Sigmund Van Dyke, was indicted for first degree murder under docket number 17068-96. The defense filed a motion to quash contending that one of the grand jurors was unqualified to serve. On May 23, 2002, the indictment was quashed on this basis. Minute entries dated December 2 and 16, 2002, indicate the state *nolle prosequied* the charge.

On September 19, 2002, a grand jury returned an indictment charging the defendant with second degree murder. This charge was assigned docket number 21327-02.

In December 2002, the defense filed a Motion to Quash the Indictment as Time Limit for Commencement of Trial has Expired and a Motion to Quash the Indictment for Violation of Right to Speedy Trial. On January 16, 2003, the trial court granted the motions and quashed the second degree murder indictment, ordering the defendant be released from custody.

That same day, the state filed a motion and order for appeal listing both docket numbers. The record filed under 03-437 in this court contains the documents pertaining to the first degree murder charge and the record in 03-438 contains the documents relating to the second degree murder charge. Both records contain the transcript of the January 16, 2003 hearing.

The state is before this court seeking review of the lower court's ruling. Two separate appeals were filed bearing the docket numbers noted above, 03-437 and 03-438. These two appeals have been consolidated as they are interrelated.

**DISCUSSION**

STATUTORY RIGHT TO TIMELY COMMENCEMENT OF TRIAL

The original charge of first degree murder was quashed by the trial court and subsequently dismissed by the state. The state did not timely appeal the trial court's ruling that the first degree murder indictment be quashed.

After the second degree murder indictment was filed, the defense filed two motions to quash bearing both docket number 17068-96, the first degree murder indictment, and 21327-02, the second degree murder indictment.

The state contends the two latest motions filed by the defense were untimely as to docket number 17068-96 because the ground concerning expiration of the time limitation for the commencement of trial must be filed prior to the commencement of trial. La.Code Crim.P. art. 535(B). The motions were not filed, and this issue was not raised until after that indictment had been quashed and the defendant had been indicted for second degree murder. The state argues that the original ground upon which the motion to quash was granted did not prohibit re-indictment of the defendant and the state did not seek to evade the running of the time limitations by dismissing the original charge and re-instituting prosecution pursuant to the trial court's order.

The defense argues the quashing of the indictment does not reset the "speedy trial clock" at zero and that the pertinent time to consider is the length of time the defendant is incarcerated.

Most of the testimony at the hearing on the motions at issue dealt with the difficulties encountered in finding attorneys certified to try capital murder cases to represent the defendant as well as the resulting delays. The trial court noted the

2

defendant was originally indicted on October 25, 1996, which meant, without any suspension or interruption of time, he had to be tried by October 25, 1999. The trial court found the delays were not attributable to the defendant. The trial court found the system to be at fault in denying the defendant the right to a speedy trial and the right to counsel and quashed the indictment, ordering the defendant's immediate release. Although the trial judge did not specify which indictment he was quashing, it appears it was the indictment for second degree murder because he acknowledged the original indictment had been quashed.

THE COURT:

All right. Evidence in these motions is hereby closed. I really don't need any closing arguments, Gentlemen, I think everybody knows what's going on. This matter comes to court on a Motion to Quash the Indictment, in view of the fact that the Defense claims the time limitations for commencement of trial have expired, and a Motion to Quash the indictment for violation of the right to speedy trial. The Defense asserts Federal and State Constitutional violations. Van Dyke is charged with one count of second degree murder. He was arrested August 17th, 1996 in connection with a fatal shooting of a man on August 16th, 1996, and he has been incarcerated in the Calcasieu Parish Correctional Center since that date. His original indictment was quashed on May 23rd, 2002, and was reindicted. He's now scheduled to be arraigned on December 17th, this date -- tomorrow, really.

Mover claims that the time limitation has prescribed, and Article 578 indicates that in capital cases no trial shall commence after three years from the date of institution of prosecution, the institution of prosecution in this case is the date of indictment, i.e., to-wit, -- I have the indictment on October 25th, 1996, thus without any suspension of time, he must have been tried by that same date three years later, which would be October the 25th, 1999.

When defendant has brought an apparent meritorious Motion to Quash based on prescription, the State bears a heavy burden to demonstrate either an interruption of prescription or a suspension of time. Institution of prosecution, for purposes of applying -- for bringing the defendant to trial, occurs at the filing of indictment, **State versus Jones**. Van Dyke's indictment was filed in October 1996, the indictment was for capital offense, first degree murder, so the three-year limitation would have expired on this date in 1999. For the prosecution

3

of the case to have remained timely beyond that date, interruption or suspension of prescription would have had to occur prior to that date. On June 20th, 1997, a trial was fixed for October 27, 1997. The record itself does not indicate why the trial did not go forward; however, the testimony indicates that the attorney of record for the defendant at that particular time was allowed to withdraw. No written Motion for Continuance was filed on that date, nor is there a written Motion for Continuance filed anywhere in the record. Let the record show that the statute requires written, continuance motions, to interrupt prescription.

On March 27th, defendant filed several motions, discovery motion, a Motion for Production of Exculpatory Evidence, and a Motion and Order for Disclosure of Police Report, the initial report. The Code of Criminal Procedure provides suspension of prescription during the time it takes for the Court to rule on these motions. Under Article 580 suspension of time and time limitations where defendant files a Motion to Quash, or other preliminary plea, to run a period of limitation established by 578 shall be suspended until the ruling of the court thereon; but in no case shall the State have less than one year after the ruling to commence the trial.

The motions listed above should not be construed as "preliminary pleas" for the purposes of suspension. In addition to the Motion to Quash, Motions for Continuance or for hearings by the defendant are the common examples of defense actions that bring about suspension under that article. Here a judge signed the order the same day the motions were filed, thus suspension did not occur.

Motions to Withdraw as Counsel appear more than once in the record. Indeed and in fact the defendant had nine lawyers at some time or another. The first of these was on August 28th, 1996, by Mr. Williams. The Second Circuit recently considered a motion to withdraw as counsel a suspension-creating event; however, in **State versus Cooper,** the Louisiana Supreme Court said only where counsel has employed the motion to withdraw as a stratagem for effecting a continuance would it suspend prescription. Thus the Court finds that the Motion to Withdraw as Counsel was indeed no fault of the defendant. In fact, nothing has been the fault of the defendant in this case.

Another discovery motion was filed October the 8th, 1997, Motion to Produce and Extension of State Witnesses -- Extension of witnesses who were going to testify on behalf of the State. That order was signed the same date, thus the suspension did not occur again. The order was signed in Open Court, fixing the trial January the 10th, 2000. Since the action prescribed October 25th, 1999, the record provides no basis for suspension or interruption of prescription, even if the January 10th, 2000 trial had occurred it would have been untimely. Indeed and

in fact, when Judge Canaday received the assignment of the case, it had already prescribed.

The text of Louisiana Code of Criminal Procedure Article 578 is clear as to time limitations for prosecution. It was anticipated the State would point to certain difficulties involving the proper appointment of counsel to this defendant as the cause of the delay. In response to this argument, **State versus Joseph** is instructive, Louisiana Supreme Court:

The State has a heavy burden of justifying an apparently untimely commencement of trial on grounds that the time limits in 578 were either interrupted or suspended. Administrative problems within the court system generally do not constitute causes of interruption beyond control of the State because the Court system cannot excuse itself from affording an accused a trial within the delays required by law, simply by relying upon internal operating procedures which result in non-compliance with the statutory mandates.

As between the defendant and the State, the ultimate burden rests with the State to bring the defendant to trial, otherwise dispose of the case. Here the State failed to meet that burden within the delay allowed under the clear provision of the Code of Criminal Procedure. In the event the State argues Van Dyke cannot show specific prejudice caused by the delay, it should show that no -- it should be noted that no such showing is required. **State versus Joseph**, Louisiana Supreme Court said recently we have never required a showing of specific prejudice once the defendant has demonstrated that the prosecution has exceeded the limits imposed by 578, and the State has failed to carry its burden of justifying the delay.

It is obvious from this Court that the District Attorney is not at fault, that the Defense is not at fault; that the system is at fault. The system has violated Mr. Van Dyke's right to counsel under Article 6 of the United States Constitution and under right to counsel under Louisiana Constitution and the right to a speedy trial under 578 of the Louisiana Code of Criminal Procedure and the Louisiana Constitution; thus, this indictment is quashed, the defendant is to be released immediately today. There will be no delays.

Louisiana Code of Criminal Procedure Article 535 states, in pertinent part:

A. A motion to quash may be filed of right at any time before commencement of the trial, when based on the ground that:

. . . .

(4) The time limitation for the institution of prosecution has expired;

5

. . . .

These grounds may be urged at a later stage of the proceedings in accordance with other provisions of this Code.

B. A motion to quash on the ground that the time limitation for commencement of trial has expired may be filed at any time before commencement of trial.

Louisiana Code of Criminal Procedure Article 578 states:

Except as otherwise provided in this Chapter, no trial shall be commenced:

(1) In capital cases after three years from the date of institution of prosecution;

(2) In other felony cases after two years from the date of institution of the prosecution; and

(3) In misdemeanor cases after one years from the date of institution of prosecution. The offense charged shall determine the applicable limitation.

The first degree murder charge had previously been quashed. The only viable charge to be attacked was the second degree murder charge. We agree with the state's assertion that the motions to quash at issue before us were untimely pursuant to La.Code Crim.P. art. 535 as to the first degree murder charge. The defendant, however, is not precluded from raising the timeliness issue as to the new indictment.

It is clear from the trial judge's ruling that he calculated the time delay for commencement of trial from the date of the original indictment. This is improper. The Louisiana Supreme Court addressed this issue in *State v. Roberts*, 278 So.2d 56 (La.1973). In *Roberts*, the defendant was originally charged by bill of information dated January 20, 1971, with violating La.R.S. 40:971(a)(1). A motion to quash was granted because the supreme court found the act which amended the statute unconstitutional. The state was allowed twenty days to file a new bill under a valid

6

statute. Seven days later, the bill was amended to charge the defendant with violating La.R.S. 40:1033(1). On appeal, the defendant argued it was improper for the state to amend the bill more than one year after the original bill was filed. The court found the new prosecution was timely instituted, relying on La.Code Crim.P. art. 576, which allows a new prosecution for the same offense or a lesser offense based on the same facts to be instituted within six months from the date of dismissal of the bill, or within the time established in Chapter 1 of Title XVIII of the Code of Criminal Procedure, whichever is longer. The court further found the trial, which was commenced within one year of the institution of the new prosecution, was timely pursuant to La.Code Crim.P. art. 578(3). In discussing the timeliness of the trial, the court stated:

> It is true that under the latter article [La.Code Crim. P. art. 578(3)] the State has only one year from the date of institution of prosecution in which to try an accused charged with a misdemeanor. However, the crime charged in the original bill of information was a felony, and the misdemeanor was not charged until the amended bill of information was filed on March 8, 1972. The trial was had in April, 1972. Both the institution of the prosecution and the prosecution itself were timely.

*Id.* at 57-58.

Additionally, La.Code Crim.P. art. 576 clearly implies that the time period begins anew with the filing of a new bill. Article 576 provides:

> When a criminal prosecution is timely instituted in a court of proper jurisdiction and the prosecution is dismissed by the district attorney with the defendant's consent, or before the first witness is sworn at the trial on the merits, or the indictment is dismissed by a court for any error, defect, irregularity, or deficiency, a new prosecution for the same offense or for a lesser offense based on the same facts may be instituted within the time established by this Chapter or within six months from the date of dismissal, whichever is longer.

> A new prosecution shall not be instituted under this article following a dismissal of the prosecution by the district attorney unless the state shows that the dismissal was not for the purpose of avoiding the time limitation for commencement of trial established by Article 578.

7

The second paragraph of Article 576 would be unnecessary if the time limitation for commencement of trial did not begin to run anew with re-institution of prosecution.

Clearly, in the matter before us, the dismissal of the first indictment was the result of that indictment being quashed. The state's re-indictment was not for the purpose of avoiding the time limitation established by Article 578. We conclude the state has two years from the filing of the second degree murder charge to bring the defendant to trial, barring any interruption or suspension of the time delay. Clearly, the time limitation for the commencement of the defendant's trial for second degree murder has not lapsed. The trial court erred in granting the motion to quash the second degree murder indictment on this basis.

CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

In one of the motions to quash before us, the defendant asserted his constitutional right to a speedy trial had been violated. The trial judge, in his oral ruling, stated that the defendant alleged both federal and state constitutional violations of his right to a speedy trial under La.Code Crim.P. art. 578 and the Louisiana Constitution. Although the trial judge did not specifically state he found a constitutional violation, it appears, based on his references, that he did. We will, therefore review this issue.

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972), the Supreme Court identified four factors which should be used to determine whether a particular defendant has been deprived of his right to a speedy trial: the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

<u>Length Of The Delay</u>

In *Barker*, the Supreme Court discussed the length of the delay as follows:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of the delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

*Id.* at 530-31.

In *Barker*, the Supreme Court found that an over five year delay between the defendant's arrest and trial was "extraordinary." *Id.* at 533. This court has previously held a three-year delay between arrest and the time of trial is presumptively prejudicial. *State v. Ellis*, 94-1106 (La.App. 3 Cir. 3/1/95), 651 So.2d 949.

In the present case, the defendant was arrested on August 17, 1996, and the second degree murder charge was quashed, resulting in his release, on January 16, 2003. Thus, at the time of his release, the defendant had been incarcerated for six years and five months. This delay was of sufficient duration to trigger further inquiry into the three remaining factors.

<u>Reasons For The Delay</u>

In *Barker*, the Supreme Court stated the following regarding the reason for the delay:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid

reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* at 531.

Listed below are the pertinent proceedings and filings appearing in the  record from the time of the defendant's arrest until his release in January of 2003.

| 8/17/96 | Defendant arrested (according to the defendant's brief). |
|---|---|
| 8/28/96 | David Williams (counsel appointed at 72-hour court) moved to withdraw as counsel because he did not maintain his capital certification. Judge Lyons allowed Mr. Williams to withdraw and appointed Pam Matthews and Eugene Bouquet to represent the defendant. |
| 10/25/96 | Defendant indicted for first degree murder. |
| 11/18/96 | On motion of the state, arraignment fixed for December 2, 1996. |
| 12/2/96 | Defendant arraigned; Evelyn Oubre moves to enroll as  co-counsel with Pamela Matthews for purposes of arraignment only.  On motion of the state, the court deferred fixing of the trial.  The defense was given thirty days to file pre-trial motions. |
| 3/21/97 | State submits motion and order to fix deadline for the defense to file its pretrial motions; fixed for hearing April 21, 1997. |
| 3/27/97 | Eugene Bouquet and Pamela Mathews filed a Motion for Discovery and Inspection, a Motion for Production of Exculpatory and Impeachment Evidence and a Motion and Order for Disclosure of Initial Report. The state was ordered to provide the requested information or show cause on 4/21/97 why it should not. |
| 6/20/97 | Trial fixed for 10/27/97 on motion of the state. |
| 6/24/97 | The state provided an answer to a defense motion for discovery and authorized the |

police department to allow the defense to inspect records and tangible objects within its control, with the exception of the offense report. The state also answered the motion for exculpatory and impeachment evidence.

7/30/97     Pro se request for bond reduction filed. The court informed the defendant via letter that such a request should be in the form of a motion and suggested that he consult his attorney.

8/27/97     Amended and supplemental discovery answer filed by the state.

10/8/97     Pamela Mathews filed a Motion to Produce Arrangements Made or Extended to State Witnesses. A show cause order was signed, but the hearing date for the motion was left blank.

10/27/97     Joint motion to continue arraignment; it was continued without date.

11/5/97     On motion of the state, trial fixed for April 6, 1997.

2/4/98     On motion of the court and at Eugene Bouquet's request, Judge Quienalty advises that Mr. Bouquet is not certified to try capital cases, as required by the supreme court. Thus, Mr. Bouquet's motion to be relieved of his appointment is granted. Court appointed the Indigent Defenders' Board to provide lead counsel. Until such time, Mr. Bouquet was to remain as counsel for matters requiring immediate attention.

3/16/98     Clerk of Court sent a letter to Evelyn Oubre informing her that she had been appointed by Judge Bradford Ware to represent the defendant. Judge Quienalty signed an order appointing Mrs. Oubre as lead counsel and Walt Sanchez as associate counsel and vacating the previous appointment of Eugene Bouquet.

| | |
|---|---|
| 4/6/98 | Pamela Mathews appeared as counsel and advised the court she was not capital-certified. On motion of the state, the matter was passed. |
| 4/15/98 | Judge Quienalty substituted Tim Saviello in place of Walt Sanchez as associate counsel for the defendant due to Mr. Sanchez's case load. |
| 4/23/99 | On motion of the state, the trial was set for September 13, 1999. |
| 9/13/99 | Timothy Saviello appeared as associate counsel for the defendant and moved to withdraw as counsel due to fact he and his family were moving to Georgia to be near a terminally-ill friend. The motion was granted. |
| 10/6/99 | On motion of the state, the trial was fixed for January 10, 2000. |
| 3/23/00 | Judge Quienalty sent a letter to the Indigent Defense Assistance Board stating he had been asked to wait to ask for a replacement of the second chair due to the fact the parties thought the case would be worked out. Because he did not wish to wait any longer, Judge Quienalty asked that a second chair be assigned as soon as possible. He noted that local certified counsel was not available. |
| 7/5/00 | Defendant submitted a letter to the court complaining that he had been incarcerated for three years and ten months without adequate representation. The defendant stated that the last time he was in court was September 13, 1999 and he saw no one, including his attorney. |
| 7/19/00 | The court responded to the defendant's letter, informing him that he cannot speak to the judge outside scheduled court dates, but he is welcome to write the court. |
| 7/26/00 | On motion of the state, the trial was fixed for December 4, 2000. |

| 7/26/00 | State submitted a Motion and Order of Appointment of Counsel. Evelyn Oubre was confirmed as lead counsel and Robert Pastor was appointed as associate counsel. |
| --- | --- |
| 7/28/00 | On motion of the state, the trial was upset and refixed for September 11, 2000. |
| 8/7/00 | Robert Pastor filed a Demand for *Bernard* Notice & Motion for Discovery of Information Relating to the Less Auspicious Aspects of the Reputation of the Deceased in this Case, a Motion to Reveal Rap Sheets and NCIC Reports, a Motion for Individual Sequestered Voir Dire and Sequestration of Jurors During Voir Dire and Motion to Preclude the State from Relying on any Non-Statutory Aggravating Circumstances. Court ordered the state to show cause on 9/11/00 why the motions should not be granted. |
| 8/23/00 | Court signed an order appointing Robert Pastor as associate counsel. |
| 9/11/00 | Evelyn Oubre appeared as counsel and requested a continuance of trial, to which the state objected. The court continued the trial. |
| 9/29/00 | Court ordered funding for experts and appointed experts to carry out penalty phase preparations. |
| 10/13/00 & 10/16/00 | On motion of the state, the trial was fixed for November 27, 2000. |
| 10/25/00 | Robert Pastor filed motion for continuance of the trial set for November 27, 2000 due to the fact that the defense motions had not been heard and he had not had adequate time to review the case or meet with the defendant or co-counsel. |
| 11/8/00 | The court granted Mr. Pastor's continuance and continued the trial to a date after motion hearings which were set for February 23, 2001. On this date, the court also granted a motion to continue filed by Evelyn Oubre |

(date stamped 11/28/00) who stated she was not prepared for trial because she had just completed a capital murder trial which took sixteen months to prepare and three weeks to try. The court granted Mrs. Oubre's motion and reset the trial for April 16, 2001.

11/27/00    On motion of the state, the trial date was refixed for 4/16/01 with any pretrial motions to be heard on 2/23/01.

12/12/00    Robert Pastor filed a Motion to Suppress Confession and Inculpatory Statements, a Motion to Suppress Identification, an Application for Bill of Particulars and Motion for Discovery and Inspection, a Motion for Production of Exculpatory Evidence, and a Motion to Produce the Initial Police Report/Incident Report. All motions were set for hearing on March 9, 2001.

12/18/00    The court appointed an investigator, a psychologist and a social worker to assist the defense and the court set their fees.

1/5/01      Evelyn Oubre and Robert Pastor presented a Motion to Withdraw as Counsels of Record due to the fact it would be approximately 10 months before the I.D.B. reimbursed them for expenses and fees incurred in the first degree murder case they had just completed. (State v. Thomas Cisco, Jr.). Hearing on the issue fixed for 1/23/01.

1/23/01     Hearing refixed for 2/1/01.

2/15/01     The state filed a *Bernard* Notice.

3/9/01      Evelyn Oubre and Robert Pastor requested a continuance of pre-trial motions fixed for March 9, 2001, and the trial fixed for April 16, 2001. Defense counsel indicated the state had no objection to the continuances. The court ordered the hearing on the pre-trial motions set for March 9, 2001, and the trial set for April 16, 2001, be upset and rescheduled after completion of the issue of funding of the defense team.

| 3/9/01 | In Judge Carter's court, the defendant appeared without counsel. On motion of the state, motions were passed without date. |
|---|---|
| 3/21/01 | Hearing on motion for payment and motion to withdraw as counsel filed by defense counsel. At request of the defense, the matter is held open for additional evidence to be brought forward at a later time. |
| 6/15/01 | Hearing on motion for payment continued. Evidence taken, but matter recessed until 6/28/01. |
| 6/28/01 | Evidence taken at the hearing on motion for payment. Court grants counsel seven days to submit briefs. |
| 12/10/01 | The court issued an opinion removing Evelyn Oubre as counsel and replacing her with Clive Stafford-Smith. Bob Pastor was ordered to continue as second chair. |
| 3/4/02 | On motion of the state, trial was fixed for 6/10/02. |
| 5/7/02 | Defense filed a Motion to Quash Grand Jury Indictment Due to Inclusion of Unqualified Grand Juror, a Motion for Discovery Necessary for a Fair Trial, a Motion to Quash the Grand Jury Indictment as District Attorney Vested with Power to Choose Which Grand Jury was Assigned, a Motion to Quash Indictment Due to Failure of Grand Jury Foreperson to Endorse It, and a Motion for Open File Discovery. The matters were set for hearing on 5/23/02. |
| 5/14/02 | On motion of the state, the court ordered motions fixed for 5/23/02. |
| 5/23/02 | Motion to Quash granted. (Minutes indicate the state agreed with the motion). The court ordered the defendant held without bail for 30 days until a new indictment was filed. If one was not filed within 30 days, the defendant was to be discharged. |

15

| | |
|---|---|
| 9/19/02 | Defendant indicted for second degree murder. |
| 11/20/02 | On motion of the state, arraignment fixed for 12/12/02. |
| 12/2/02 | First degree murder charge *nolle prossed* by the state. |
| 12/12/02 | On motion of the state, arraignment refixed for 12/17/02. |
| 12/17/02 | Motions to quash for untimely commencement of trial filed by the defense. On motion of the state, the matter was fixed for hearing on 1/16/03. Defendant was arraigned and on motion of the state, trial was fixed for 4/7/03. |
| 1/10/03 | Defense Motion to Appoint Special Process Server filed and granted. |
| 1/16/03 | Motion to quash heard and granted. Defendant released from custody, but ordered to remain in the jurisdiction of the court. |

At the January 16, 2003, hearing on the motions to quash, testimony was taken from Judge Quienalty, who presided over this matter until his retirement in October of 2000. He testified as to the numerous problems throughout the case with getting qualified counsel to represent the defendant. Other problems related to the payment of counsel who met the qualifications and were capital certified. He was of the opinion these problems hampered both the defense and the state. These problems appear, primarily, to have been associated with securing counsel for second chair. We note that when the defendant was arraigned, Evelyn Oubre enrolled as co-counsel for arraignment purposes only, on December 2, 1996. Therefore, the defendant was represented by Eugene Bouquet and Pamela Mathews until February 4, 1998, at which time Eugene Bouquet was relieved of his appointment because he was not capital-certified. On March 16, 1998, Evelyn Oubre was appointed as lead counsel

16

and maintained that position until December 10, 2001. She was replaced by Clive Stafford-Smith at that time, who continues to represent him. Funding of the defense team was an issue throughout Ms. Oubre's representation, as the record reflects.

Judge Michael Canady began presiding over this case on November 1, 2000. He testified that when he took over, there was a hearing or trial scheduled for November 27 in this case. He recalled a meeting in his office with Ms. Oubre, Mr. Pastor, and Mr. Frey during which they discussed the fact that there were motions pending that needed to be heard, and Ms. Oubre requested a continuance. She followed this request up with a formal motion. He further testified that the following January, Ms. Oubre filed a motion to withdraw because she had just finished another major trial and was being paid for her services on a monthly basis by the I.D.B., which caused her some concern. At this time, Ms. Oubre had been representing the defendant for two years and nine-and-one-half months. The four hearings on this matter commenced in March and post-trial briefs were submitted near the end of the summer of 2001. During this time the case was put on the back burner until it was determined whether Ms. Oubre would continue to represent the defendant. According to Judge Canady, as things progressed, the I.D.B. came up with the funds to satisfy the other matter and Mr. Stafford-Smith indicated he would represent the defendant at no cost to the I.D.B. In December, 2001, Judge Canady substituted Mr. Stafford-Smith for Ms. Oubre. When asked if these hearings were "beyond the control of the State," Judge Canady explained that the state was involved in the hearings because they wanted to move forward, but defense counsel argued they should not be forced to move forward.

Evelyn Oubre testified she was appointed to represent the defendant on March 16, 1998. Approximately three months after her appointment in the present case, Judge Gray asked her to represent a Mr. Porter in a capital case, and she accepted. On September 1, 1998, Judge Quienalty asked Ms. Oubre to represent Thomas Cisco and she accepted the appointment. She completed Thomas Cisco's case on October 18, 2000, and finished Mr. Porter's case in June of 1999. Ms. Oubre testified she filed no motions during her representation of the defendant because prior counsel had already filed all the necessary pre-trial motions and they had been heard. Ms. Oubre had two other first degree murder trials going on and she admitted that she left the defendant's case on a back burner. She explained that she had agreed with the attorneys appointed to second chair that they would actively work the defendant's case. Because Ms. Oubre was working continuously on the Porter and Cisco trials, she did not do anything for the defendant. Mr. Pastor filed the motions in the defendant's case in October and December of 2000.

During the course of Judge Quienalty's testimony, the prosecutor asked the witness whether the problems securing certified counsel were attributable to the state. At that time, Judge Gray, who was presiding over the hearing remarked that, "the Legislative and the people who run the Indigent Defender Board or the people who deal with the capital cases and the appointment and appropriations of money and the Supreme Court rules and all that stuff" are the state. He found that the delays were not "attributable to the defendant, not one, and none of them attributable to the State, not you, [John Coffmen] not Mr. Frey, not anybody else, not Ms. Oubre." He then stated, "Everybody tried. And I've been fighting this battle for years, and I can tell

18

you right now, you put on everything else you want, but I'm going to quash this indictment."

In assessing the reasons for the delay, we disagree with the trial court's conclusion that none of the delays were attributable to the defense. There have been numerous defense motions filed throughout the life of this case, some of which have yet to be ruled upon. Since September 2000, defense counsel has requested three separate continuances as to the trial fixing and a continuance for a hearing on pre-trial motions.

Ms. Oubre was appointed to represent the defendant on March 16, 1998. Admittedly, she was burdened with three ongoing first degree murder trials and, in the present case, did not have a permanent second chair to assist her until July 26, 2000. There is no indication in the record, however, that she informed the court that her obligations were hindering her ability to work on the defendant's case until January 2001.

The testimony at the hearing certainly establishes that a lack of funding has created a dilemma in the "system" such that it is difficult to secure certified counsel to represent indigent defendants. In the matter before us, however, the vast majority of the delays are attributable to the defense.

Based on the trial judge's remarks, we further conclude he did not adequately review the remaining factors which must be considered under *Barker v. Wingo*, namely, the defendant's assertion of his rights, and the actual prejudice to the defendant.

Defendant's Assertion of His Right

In the following passage, the Supreme Court discussed a defendant's assertion of his right to a speedy trial in *Barker*:

> We have already discussed the third factor, the defendant's responsibility to assert his right. Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that a failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Id.* at 531-32.

In this case, a motion to quash based on the denial of the defendant's right to a speedy trial was not filed until December 17, 2002, several years into the case. The defense contends the defendant asserted his right long before that time in pro se letters written to District Attorney Rick Bryant, Chief Public Defender John Lavern and Judge Gray in an effort to move his case along. The postmark on the letter sent to Mr. Bryant is not clear, but discussion between Mr. Stafford-Smith and Mr. Frey at the hearing on the motion to quash indicates the letter was probably sent sometime after October 11, 1996. On October 11, 1996, Mr. Frey sent a letter to the defendant advising him of the date and time that the grand jury would convene to hear testimony in his case. He invited the defendant to appear and testify and if he were to accept this offer, he would be requested to waive his right against self-incrimination. The defendant responded in a letter to Mr. Bryant informing him that he had received his letter and his attorney "act[ed] like he didn't want [him] to go." The defendant stated

20

that he had informed his attorney that he wanted to go to the proceeding, but he could see that his attorney did not want to help him. In closing, he stated, "And I'm asking can you set another day for me." This is not an assertion of the defendant's right to speedy trial. He was requesting that the district attorney set another grand jury proceeding for him because, although he wanted to accept the district attorney's offer to participate in the earlier proceeding, his attorney did not agree. This is not a request by the defendant that he be brought to trial. Likewise, we have reviewed the other letters that defense counsel contends were assertions of the defendant's right to a speedy trial. Those letters, which were sent to Mr. Lavern, Mr. Bouquet and Judge Gray pertain to the defendant's request for a bond reduction. Although not mentioned in the defense's brief, there is another letter written by the defendant to Judge Gray dated July 2, 2000. In this letter, the defendant informed the judge that he had been incarcerated for three years and ten months, during which time he was appointed countless attorneys with "no representation." The defendant stated that his last court date was September 13, 1999, and he did not see "anyone not even [his] lawyer." From that time to the date the letter was written, he still had not seen his attorney or heard anything about his situation. In closing, the defendant stated he wanted someone to understand him and he asked if he could speak to Judge Gray or continue to write him and explain his case. This letter cannot be viewed as an assertion of the defendant's right to speedy trial. It was a complaint regarding his representation. The first actual complaint that the defendant had been denied his right to a speedy trial is found in the motion to quash.

In *State v. Labrano*, 363 So.2d 427 (La.1978), in determining the defendant's constitutional speedy trial rights had not been violated, the supreme court found the

21

defendant had not aggressively asserted his right to speedy trial. The defendant was arraigned approximately twenty months after the bills of information were filed. Nine months after arraignment, the defendant asserted his right to a speedy trial. He pled guilty four months later. The court stated, "[f]ailure to assert his right to a speedy trial soon after the arraignment is persuasive that he anticipated no prejudice in presenting his defense. Furthermore, defendant made no objection to any of the continuances and, in fact, joined in one continuance after he had filed his motion to quash, asserting his right to a speedy trial." *Id.* at 429.

In the present case, when the trial date was reset, it was often for a date three to five months away. The defendant did not object to this nor did he object to any continuances of the trial date. Additionally, most of the continuances were at the request of the defense.

Prejudice

The fourth factor to be considered in assessing whether a defendant's constitutional right to a speedy trial has been violated is whether the defendant has been prejudiced. In *Barker*, (footnotes omitted), the Supreme Court stated:

> A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time

22

> spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

*Id.* at 532-33.

At the hearing on the motion to quash, several witnesses testified about the prejudice suffered by the defendant. Charles LaVergne, a captain with the Calcasieu Parish Sheriff's Office, testified that the defendant has been in custody in medium/maximum security in two to three man cells since August 17, 1996, and of the 1,014 prisoners, he has been incarcerated the longest.

Karen Guillory, testified that the defendant is the father of her two daughters. The younger daughter was born around the time the defendant was arrested and he did not get to touch her until May 21, 2002. Ms. Guillory's testimony, in large part, focused on the difficulties encountered in the defendant's ability to establish and maintain a relationship with his daughters.

The defendant's mother, Mildred Van Dyke, testified that due to the defendant's incarceration, he was absent when she suffered a heart attack, when she married and when her brother passed away. The defendant also testified at the hearing. His testimony centered around his lack of contact with the various attorneys appointed to represent him during his incarceration as well as the conditions and difficulties he has faced being separated from his family. The defendant also talked about the jail activities from which he has been excluded. Finally, the defense

23

presented a death certificate for Kimberly Antonio Guilbeaux. According to Mr. Stafford-Smith, they understood that he would be a significant witness in the case, but he died on June 23, 2001, in Houston, Texas.

In his brief to this court, defense counsel states that Guilbeaux was the "driver of the green Camaro" and was an eyewitness to the incident.

On rehearing in *State v. Alfred*, 337 So.2d 1049, 1057 (La.1976), the supreme court stated:

### *Prejudice to the Defendant*

None is alleged. None is shown. There is, of course, some prejudice inherent in all accusations of crime, arrests and incarcerations. The anxiety and concern suffered by the accused and the disruption of his family life by the charge and incarceration are factors to be considered. Loss of his job is another. But defendant has not alleged disruption of his family life, and the record does not shed light on whether he had a job. Deprivation of liberty which results from incarceration is always prejudicial. But this prejudice, like other, is a necessary consequence of any valid criminal charge, especially where the accusation involves first degree murder, a non-bailable offense.

The amorphous quality of the right to a speedy trial leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because, unlike the exclusionary rule or the reversal for a new trial, it means that a defendant who may be guilty of a serious crime, or two as in this case, will go free without having been tried. Overzealous application of this remedy would infringe "the societal interest in trying people accused of crime, rather than granting them immunization because of legal error . . . ." *United States v. Ewell*, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), White, J. Barring extraordinary circumstances, courts should be reluctant indeed to rule that a defendant has been denied a speedy trial. In none of this Court's decisions since *Barker v. Wingo* has a defendant been released for this reason.

The delay that can be tolerated for an ordinary street crime is considerably less than for a serious double murder. In any case, however, a valid reason, such as a missing witness, should serve to justify appropriate delays.

The most serious basis for a complaint by the accused that he has been denied a speedy trial is the fact that he has been prejudiced thereby.

24

And the most persuasive argument to support a claim of prejudice is the fact that the defense has been impaired. The defense is principally impaired by the death or disappearance of its witnesses during the delay. But there is no claim here that this has happened. This delay was not unusual considering the nature of the case and the reasons assigned for continuances.

In *State v. Cole*, 384 So.2d 374 (La.1980), *cert. denied*, 449 U.S. 1076, 101 S.Ct. 855 (1981), the supreme court found serious prejudice was not shown where there was no evidence of what the witness would have said or that it would have been beneficial to the defense.

Defense counsel states in his brief that Mr. Guilbeaux's position as the driver is identified in the supplemental police report which was not filed in the record with the other discovery. He attached an excerpt from the report to his brief, but it was not introduced at the hearing and is not a part of the record before this court. There is no evidence before the court to support defense counsel's argument that Mr. Guilbeaux is a crucial witness.

As stated by the supreme court in *Alfred*, 337 So.2d 1049, incarceration and the deprivation of liberty resulting therefrom is always prejudicial. According to *Barker*, the most serious consideration is impairment of the defense. The defense has not shown what Guilbeaux would have testified to or that it would be favorable to the defense.

Considering all of the circumstances presented in this case, this court does not find a violation of the defendant's right to a speedy trial. The trial court erred in granting the motion to quash the second degree murder indictment.

### **DECREE**

As the indictment for first degree murder had already been dismissed in trial court docket number 17068-96, the trial court was incorrect in granting a motion to

25

quash that indictment. As we find no statutory or constitutional basis for a finding that the defendant's right to a speedy trial has been violated, we reverse the trial court's order quashing the indictment for second degree murder in trial court docket number 21327-02. The case is remanded for further proceedings.

**REVERSED AND REMANDED.**