928 So.2d 649 (2006)
STATE of Louisiana
v.
James THOMAS and Percy Dyer.
No. 2004 KW 2805 R.
Court of Appeal of Louisiana, First Circuit.
February 15, 2006.
*652 Kristi Haygood, Paul Knight, Assistant Attorneys General, Department of Justice, Baton Rouge, Counsel for Plaintiff State of Louisiana.
Leo J. Berggreen, Baton Rouge, Counsel for Defendants James Thomas and Percy Dyer.
Before: WHIPPLE, DOWNING and HUGHES, JJ.
DOWNING, J.
In this counseled criminal writ application, the relators, James Thomas and Percy Dyer, seek review of the trial court's ruling denying their motion to quash, wherein they claimed the time limits for trial had expired. Thomas and Dyer[1] originally were indicted on November 6, 1996, and were charged with first-degree murder for a murder that was committed on August 21, 1996. Relators' original indictment was amended to second-degree murder in November 2000. After a motion to quash was filed by relators regarding the makeup of the grand jury for the original indictment, on October 28, 2002, relators were reindicted with second-degree murder. The original indictment charging relators was nol-prossed on December 13, 2002.
In March 2003, relators filed motions to quash the indictments based upon the denial of the right to a speedy trial. On August 15, 2003, the trial court denied the motion to quash and set the trial for September 29, 2003. The trial court gave no reasons for its ruling. Both Thomas and Dyer sought review with this Court. On September 23, 2003, this Court (Judges Foil, Fitzsimmons, and Gaidry), denied Thomas's writ application as untimely, stating:
WRIT DENIED AS UNTIMELY. The trial court set September 15, 2003, as the return date for filing relator's writ application with this court. Relator's application was filed untimely on September 18, 2003. See Uniform RulesCourts of Appeal, Rule 4-3. Additionally, relator failed to obtain a timely extension of the return date.
See State v. Thomas, 2003 KW 2033 (La. App. 1 Cir. 9/23/03)(unpublished).
Concerning Dyer's application, on September 12, 2003, this Court (Judges Carter, Parro, and Guidry) ordered the state to file a response by September 23, 2003. On September 26, 2003, this Court (Judges Foil, Fitzsimmons, and Gaidry) stayed the trial and ordered that copies of the complete record be filed with this Court. On March 22, 2004, this Court (Judges Parro, Fitzsimmons, and Gaidry) granted in part and denied in part Dyer's writ application, stating:

*653 WRIT GRANTED IN PART AND DENIED IN PART: Although the state strenuously argues that relator absconded from custody and was beyond the reach of the state for thirteen months, defense counsel claimed relator's escape lasted only eleven days, and the record furnished in response to this Court's order contains a minute entry apparently showing relator was present in court less than two months after the escape. The time limits for trial were interrupted with relator's escape and began to run anew when he was returned to custody. However, this Court cannot determine when the time limits for trial began from the information available to it. Accordingly, this matter is REMANDED to the district court, for a determination of when the time delays began and recalculation of the applicable trial limits. We note that relator was not beyond the legal process of the state while he was in state custody for his escape, and the period began to run again after he was captured, not after completion of his sentence. See State v. Devito, 391 So.2d 813 (La.1980).
See State v. Dyer, 2003 KW 1922 (La.App. 1 Cir. 3/22/04).
Subsequently, the state and Dyer's counsel filed into the record a stipulation agreeing that Dyer escaped from Iberville Parish jail on December 25, 1996, and that he was arrested as a fugitive on January 11, 1998.
On May 4, 2004, Thomas filed another motion to quash the indictment based on prescription and the denial of his constitutional right to a speedy trial. On June 9, 2004, Dyer filed another motion to quash the indictment based on prescription and the denial of his right to a speedy trial. Following several continuances, the motions were heard on December 7, 2004, and denied by the trial court. Thomas and Dyer then filed an application with this Court seeking review of Judge Dupont's denial of their motions to quash. We note that in January 2000, the trial court granted the Iberville Parish District Attorney's motion to recuse on this case, and the Louisiana Attorney General now is prosecuting the case.
Relators set forth two claims in their writ application: 1) that the trial court erred in concluding that the time limitations of La.Code Crim. P. art. 578 had not run, and 2) that the trial court erred in concluding that relators were not denied their constitutional right to a speedy trial. On March 7, 2005, this Court issued the following action:
WRIT GRANTED. The state did not carry its burden of establishing that the time limits for trial had not expired, and this prosecution would not be timely. The district court hereby is ORDERED to enter a judgment quashing the charges and discharging the defendants. The effect of this order is STAYED until April 18, 2005.
RDD
JDH
Whipple, J. dissents and would deny the writ.
See State v. Thomas and Dyer, 2004 KW 2805 (La.App. 1 Cir. 3/7/05)(unpublished).
The state subsequently filed for a rehearing and requested an extension of the stay order. On March 29, 2005, this Court denied the state's request for rehearing and request for extension of stay order. Judge Whipple dissented, stating that she would grant the state's application for rehearing and request for extension of stay order.
The state then sought review with the Louisiana Supreme Court and asked for a stay of the proceedings. On April 20, *654 2005, the Supreme Court denied the state's request for a stay. On April 27, 2005, the Supreme Court granted the state's writ application and remanded the matter to this Court for briefing, argument and opinion, stating, "In remanding, it is not our intent to dictate a result." Justice Weimer concurred, stating, "At the risk of stating the obvious, should the Court of Appeal deem it advantageous, it may request a per curiam from the trial court." See State v. Thomas and Dyer, XXXX-XXXX (La.4/27/05), 901 So.2d 427.
On May 17, 2005, this Court issued an order, wherein the Iberville Parish Clerk of Court was ordered to file with this Court two copies of the record; relators and the state were ordered to file a brief with this Court; and the trial court, Judge William Dupont, was ordered to file a per curiam, explaining his basis for denying the motion to quash.[2] In the brief filed by relators, they set forth two claims.

Claim Number One:
In their first claim, relators contend that the trial court committed legal error in failing to conclude that the time limitations of La.Code Crim. P. art. 578 had not expired. Relators argue that once a motion to quash is filed, a heavy burden is placed on the state to show legal cause for the delay. Relators contend that the charges against them have prescribed and the state failed to meet its burden to prove an interruption or suspension of the prescriptive period.
Relators claim that in the instant case, the minute entries show virtually every request for continuance was made by the state. According to relators, their previously filed motions apparently were waived in 1998. Relators further set forth that under La.Code Crim. P. art. 576, a new prosecution shall not be instituted unless the state shows the dismissal was not for the purpose of avoiding time limitations established by La.Code Crim. P. art. 578. Relators contend that they were reindicted for the purpose of avoiding the time limitations.
Relators set forth several examples in an attempt to prove that the state was responsible for the delays. According to relators, on December 12, 1996, the state filed a motion for discovery, which remains unsigned and was never set for a hearing. Relators claim that the court never formally ruled on the motion and the state has made no effort to secure the ruling. On February 20, 1997, Thomas filed a motion to suppress; however, according to relators, by February 28, 1997, the parties were conducting general discovery and the trial court granted all of Thomas's motions except for the motion to suppress. He contends that the motion to suppress was a generic motion and there has been no further inquiry into the motion. According to relators, from February 28, 1997, until May 7, 1998, there was no action on the case and the state did nothing to move the matter to trial. Relators contend that no basis for delay appears in the record.
According to relators, Thomas filed a motion to quash and motion for speedy trial on May 7, 1998, and the matter was set for a hearing on June 2, 1998. However, after a series of continuances, the state and the defense filed a joint motion to continue on November 5, 1998. According to relators, from November 5, 1998 to October 5, 1999, no recorded action was taken on the case. Relators set forth that the trial court did not rule on the motion to quash until August 15, 2003.
On April 5, 2000, relators filed an additional motion to quash, which was set for a hearing on May 2, 2000. According to *655 relators, the state, without explanation, moved to continue the hearing until July 28, 2000. On August 9, 2000, the state again continued the hearing until September 5, 2000. According to relators, on January 2, 2001, a pro se motion to quash was filed. There is no recorded action on the case from January 2, 2001, until May 14, 2002, when relators filed a motion for release from bond obligation. Relators note that there is no explanation for this sixteen-month delay, and the state took no action to move the case to trial.
According to relators, on August 5, 2002, the court heard argument on a motion to quash but did not rule on the motion. The court reassigned the matter for ruling on September 9, 2002; however, there is no minute entry for September 9, 2002. On October 7, 2002, the court again reassigned the matter for ruling and additional motions on October 28, 2002. According to relators, the October 7 continuance was made over the relators' objection. On August 15, 2003, the trial court denied relators' motion to quash and set the matter for trial on September 29, 2003.
In its response, the state contends that the fault for the delays in the instant case rests primarily with relators. According to the state, there were significant interruptions and suspensions of the prescriptive period, including an escape from jail by relators and a number of motions filed by relators for which no ruling was ever obtained. The state contends that the prescriptive period is suspended until there is a ruling on such motions.
According to the state, the three-year prescriptive period for the first-degree murder indictment for Thomas was suspended on February 20, 1997, which was the date he filed his motion to suppress. Thus, the state contends that only two months out of a three-year prescriptive period have lapsed. As to Dyer, the state contends that the three-year prescriptive period for his first-degree murder indictment was suspended since his return to custody on January 12, 1998, as he had outstanding motions before and after that date.
The state further argues that the two-year prescriptive period regarding relators' second-degree murder indictments also has not lapsed. The state explains that relators were indicted with second-degree murder after it was determined that there may have been some merit to a motion to quash filed by relators in regard to a claim of racial discrimination in the choosing of a grand jury foreperson. Thus, the state claims that relators were not reindicted to avoid prescription problems. Furthermore, the state contends that because the time limitations for prosecuting relators on the charge of first-degree murder had not prescribed, there was no danger in seeking a new indictment. The state argues that because of the new indictment, it had until at least October 28, 2004, to try relators on the second-degree murder charge. However, because relators filed a motion to quash in March 2003, the state contends that the prescriptive period again was suspended and, once a final ruling is obtained on the motion to quash, it has at least nineteen months left to try relators for second-degree murder.
La.Code Crim. P. art. 578 provides the time limits for trial, as follows:
Except as otherwise provided in this Chapter, no trial shall be commenced:
(1) In capital cases after three years from the date of institution of the prosecution;
(2) In other felony cases after two years from the date of institution of the prosecution; and

*656 (3) In misdemeanor cases after one year from the date of institution of the prosecution.
The offense charged shall determine the applicable limitation.
An interruption of prescription occurs when a defendant cannot be tried because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state. Once the cause of interruption no longer exists, the time limit begins anew. See La.Code Crim. P. art. 579. In contrast, La.Code Crim. P. art. 580 provides that when a defendant files a motion to quash or other preliminary plea, the time limits set forth in article 578 are suspended until the ruling of the court; but in no case shall the state have less than one year after the ruling to commence the trial.
The prescriptive period is merely suspended until the trial court rules on the filing of preliminary pleas; the relevant period is not counted, and the running of the time limit resumes when the court rules on the motions. A preliminary plea is any pleading or motion filed by the defense that has the effect of delaying trial, including properly filed motions to quash, motions to suppress, or motions for a continuance, as well as applications for discovery and bills of particulars. State v. Brooks, 02-0792, p. 6 (La.2/14/03), 838 So.2d 778, 782.
In State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284, 1286, the Louisiana Supreme Court also discussed the purpose of these time limits, as follows:
The purpose of the statute's mandating dismissal, when legislative time limits have elapsed, is to enforce the accused's right to a speedy trial and to prevent the oppression caused by suspending criminal prosecutions over citizens for indefinite periods of time. See State v. Walgamotte, 415 So.2d 205, 210 (La. 1982) (quoting State v. Theard, 212 La. 1022, 34 So.2d 248 (1948)). Moreover, the statutory scheme limiting the state's time in which to commence trial after initiating prosecution "prevents delays in the administration of justice by imposing on judicial tribunals an obligation of proceeding with reasonable dispatch in the trial of criminal prosecutions." Id. at 251. Statutes of limitation, as the primary guarantees against inordinate delays, represent the legislative balancing of the interests of the state against the interests of the defendant. Accordingly, these limitations should be given effect unless the state carries its burden of showing valid grounds to support an interruption or sufficient suspension of these time periods.
The legislation fixing the time limitations for prosecution serves to establish legislative recognition of the time, which the legislature has in all probability found to be a reasonable delay for prosecution. State v. Wilson, 95-0613, p. 4 (La. App. 1 Cir. 4/4/96), 672 So.2d 716, 718. When a defendant has brought an apparently meritorious motion to quash based on prescription, the state bears a heavy burden to demonstrate either an interruption or a suspension of the time limit such that prescription will not have tolled. State v. Rome, 630 So.2d at 1286. The trial court cannot give the state the benefit of doubt, but must require the state to prove suspension or interruption of the time delays if the prosecution takes place beyond the statutory delays. See State v. Morris, 99-3235 (La.2/18/00), 755 So.2d 205 (per curiam).

*657 Timeline for Thomas and Dyer[3]:
November 6, 1996Relators indicted with first-degree murder.
December 12, 1996Dyer filed a motion to suppress, a motion for preliminary examination and speedy trial, and a motion for discovery. State filed a motion for discovery.
December 25, 1996Dyer and Thomas escaped from jail.
December 28, 1996Thomas returned to custody.
January 17, 1997Thomas filed a counseled "Request and Motion for Discovery, Disclosure and Inspection and for a Bill of Particulars." Thomas also filed a motion for preliminary examination, and motion for speedy trial. Hearing on motions set for January 24, 1997.
January 23, 1997State filed an answer to Thomas's motion for discovery.
February 5, 1997Thomas appeared for motion hearing. On state's motion, hearing continued until March 5, 1997.
February 20, 1997Thomas filed a counseled motion to suppress. Thomas also filed a Brady motion and a motion asking the court to require the state to answer the bill of particulars. Hearing on motions set for April 7, 1997.
April 8, 1997Thomas's counsel asks to set status conference for May 6, 1997.
April 14, 1997On state's motion, hearing reassigned to May 12, 1997.
May 12, 1997On state's motion, matter continued to August 8, 1997.
August 18, 1997On state's motion, matter continued to November 17, 1997.
January 11, 1998Dyer arrested; returned to jail on January 12, 1998.
January 12, 1998On state's motion, matter reassigned to June 15, 1998.
March 3, 1998On state's motion, matter continued. Hearing on motions set for May 5, 1998, and trial set for June 15, 1998.
May 5, 1998Trial court ordered state to answer discovery motion and continued motions until June 2, 1998.
May 14, 1998Thomas filed a motion to quash based on the state's alleged failure to provide a sufficient bill of particulars. Set for hearing on June 2, 1998.
June 2, 1998Thomas appeared at hearing. "Motions waived." Pretrial set for July 7, 1998. Dyer's minutes state that the matter was continued to July 7, 1998 on the state's motion. Thomas also filed a pro se motion for a speedy trial. Matter assigned for a hearing on July 7, 1998.
June 10, 1998Dyer filed a counseled motion to quash indictment based on the state's failure to provide a sufficient bill of particulars.
June 30, 1998State filed an answer to the defense motion for discovery.
July 6, 1998On state's motion, bench warrant issued for Thomas.[4] On state's motion, matter reassigned for jury trial on October 19, 1998.
July 7, 1998Thomas appeared. On relators' motion, matter continued until August 4, 1998.
August 4, 1998On relators' motion, matter continued until September 3, 1998.
September 3, 1998Trial court ordered matter continued until October 2, 1998.
*658 September 23, 1998Relators filed pro se motions requesting the confession and inculpatory evidence. Court assigned matter for a hearing on November 5, 1998.
October 2, 1998On Thomas's motion, matter continued until January 5, 1999. Court will appoint attorney from Indigent Defender's Board to represent Thomas.
October 21, 1998On motion of the state, matter was continued and reassigned until January 4, 1999.
November 5, 1998On motion of state, it was ordered that all motions were waived. On a joint motion, matter was continued until December 12, 1998.
January 4, 1999On motion of state, matter reassigned for jury trial on April 12, 1999. A hearing on motions was set for March 3, 1999.
April 12, 1999On motion of state, case continued to June 14, 1999.
June 16, 1999On motion of state, case continued to July 12, 1999.
July 12, 1999On motion of state, case continued until August 9, 1999.
August 9, 1999On motion of state, reassigned to November 8, 1999.
November 8, 1999On motion of state, continued to February 7, 2000.
December 6, 1999Motion to quash filed by Thomas. Hearing on motion set for February 2, 2000.
December 7, 1999Court held a funding hearing and denied relators' request for a stay.
February 8, 2000On motion of state, case realloted and set for trial on March 3, 2000.
March 3, 2000Status conference. Court ordered state and defendants to file all motions within thirty days. State filed an ex parte motion to sever defendants for purpose of trial. Thomas filed a motion to set aside, which specifically reserved his rights in his motion to quash. According to minutes, hearing on motions set for April 13, 2000.
March 23, 2000State filed motion to give defendants notice pursuant to La.Code Crim. P. art. 517. Matter set for a hearing on April 13, 2000.
April 4, 2000Thomas filed a motion for discovery. Motion was granted on April 6, 2000.
April 5, 2000Thomas filed motion to quash and change of venue. Hearing set for May 2, 2000.
April 13, 2000Court appointed another attorney to assist defense counsel and ordered all motions to be filed by July 3, 2000. Court set a hearing on the motions for July 28, 2000, and trial for August 7, 2000.
May 2, 2000On motion of state, Thomas's trial continued to July 28, 2000 and Dyer's trial continued to August 7, 2000.
May 4, 2000Thomas filed a motion for release of bond obligation for failure of state to timely institute prosecution. A hearing was set for June 10, 2000.
August 9, 2000On motion of state, case continued to September 5, 2000.
October 24, 2000Court issued a "Scheduling order" regarding a time line for hearing and filing all motions. Court indicates that all discovery should be completed by December 31, 2001, and all dispositive motions should be filed by December 31, 2001. All non-dispositive motions should be filed by January 23, 2001. Motions set to be heard on February 20, 2001.
November 3, 2000State amended indictment to charge relators with second-degree murder.
January 2, 2001Thomas filed a motion to quash the indictment based on racial *659 discrimination in the selection of the grand jury. He also filed a motion to adopt motions of other defendants. A hearing was set for January 23, 2001.
January 11, 2001Dyer filed a pro se motion to quash the indictment based on alleged ambiguity in the indictment. A hearing was set for February 12, 2001.
January 31, 2001Dyer filed a notice of intent to file other motions. A hearing was set for February 20, 2001.
May 4, 2001Motion for clerk to provide defense counsel with transcripts.
May 14, 2002Dyer filed a pro se motion for release of bond obligation. A hearing was set for June 10, 2002.
June 14, 2002Dyer filed a motion for release under La.Code Crim. P. art. 701(D). Dyer also filed a pro se motion to quash and request for change of venue. A hearing was set for September 9, 2002.
July 15, 2002Status conference set for August 5, 2002. According to the state, it also filed an opposition to relator's motion to quash.
July 31, 2002Dyer filed a motion to quash based on a claim regarding the grand jury. The trial court set a hearing for August 5, 2002.
August 5, 2002Trial court continued hearing on relators' motion to quash and motion for speedy trial until September 9, 2002.
September 3, 2002Motion and judge's order filed into record. Dyer filed motion in June 2002 and order signed by judge on August 22, 2002, which set hearing for September 9, 2002.
October 7, 2002Minute entry reflects that the matter was "passed for motions." Defense counsel objected.
October 28, 2002Relators reindicted with second-degree murder.
November 15, 2002On state's motion, arraignment continued until December 13, 2002.
December 13, 2002On state's motion, arraignment continued until January 6, 2003. Charges against relators for first-degree murder were nol-prossed.
January 6, 2003On court's motion, case continued until February 3, 2003.
February 3, 2003On court's motion, case continued until March 17, 2003.
February 26, 2003Thomas filed a motion for speedy trial, a motion for release of bond obligation, and a motion requesting that all previously filed motions be incorporated under the new charges. Motion incorporating all previous motions granted on February 28, 2003. A hearing was set for March 17, 2003.
March 17, 2003On state's motion, the hearing on the motions was continued to August 15, 2003. On state's motion, another hearing on motions set for May 12, 2003, and trial was set for July 7, 2003. Dyer waived formal arraignment and entered plea. Dyer filed a counseled motion to quash. Trial court denied stay order.
March 26, 2003Thomas filed a motion to quash. A hearing was set for May 12, 2003.
May 12, 2003On the state's motion, matter continued until August 15, 2003. Defense counsel objected to continuance.
August 15, 2003After a hearing, trial court denied motion to quash and set matter for trial on September 29, 2003.
September 5, 2003Dyer sought supervisory review with this Court.
September 12, 2003This Court ordered the state to file a response to Dyer's writ application.
September 18, 2003Thomas sought review with this Court.
*660 September 23, 2003This Court denied Thomas's writ application as untimely. (See 2003 KW 2033).
September 26, 2003This Court stayed Dyer's trial and ordered the Iberville Parish Clerk of Court to file a copy of the complete record with this Court. (See 2003 KW 1922).
November 20, 2003Pro se motion to reduce bond. A hearing was set for December 8, 2003.
December 8, 2003Motion to reduce bond continued until January 12, 2004.
January 12, 2004Trial court denied motion to reduce bond.
January 14, 2004Hearing on motions; matter stayed by this Court, so no action taken.
March 22, 2004This Court granted in part and denied in part Dyer's writ application. The matter was remanded to trial court for time limit determination. (See 2003 KW 1922).
April 19, 2004Dyer's counsel requested a status conference. Trial court ordered status conference to be held on July 19, 2004.
May 4, 2004Thomas filed a motion to quash the indictment. Hearing on motion set for July 19, 2004.
June 10, 2004Dyer filed a counseled motion to quash the indictment. A hearing was set for July 19, 2004.
July 19, 2004Motion hearing. Trial court gave fifteen days to file motions.
August 5, 2004State filed opposition to motion to quash.
August 13, 2004Joint stipulations filed into the record.
August 18, 2004Defense counsel requested copy of criminal file. Granted and given to counsel on September 23, 2004.
August 31, 2004Court granted relators' request for an extension after state's opposition filed.
November 10, 2004Dyer's counsel filed motion for continuance due to conflict for November 22, 2004, hearing. Hearing continued until December 7, 2004.
December 7, 2004Hearing on motions to quash. Motions denied by the trial court. Court found October 28, 2002, indictment to be controlling. Court stayed matter until December 31, 2004; set a motion hearing for May 7, 2005; and set a trial date of May 16, 2005.
December 9, 2004Relators filed notice of intent to file for supervisory writs.
March 7, 2005This Court granted relators' writ application. (See 2004 KW 2805).
At the December 7, 2004, hearing on the motions to quash filed by relators, the state contended that it was the fault of relators that they never obtained rulings on their motions to quash and other preliminary motions. The state argued that the lack of rulings on these motions suspended the prescription period until the trial court ruled on the motions. The state also contended that because relators were reindicted in 2002 for second-degree murder due to problems with the grand jury, relators' prescription period started anew when they were reindicted.
Relators argued, however, that the state filed numerous continuances in order to continue hearings on relators' motions and that some of their motions have yet to be ruled upon. Relators argued that they have been prejudiced by the delay.
The trial court indicated that it was of the opinion that the indictment filed on October 28, 2002, charging relators with second-degree murder controlled the prescriptive period. Thus, the court denied relators' motions to quash and set a trial date for May 16, 2005.
*661 In his per curiam filed with this Court on June 17, 2005, Judge William C. Dupont notes that he only took office in October 2004; thus, he made the best determinations he could under these circumstances. According to Judge Dupont, relators were originally indicted on November 6, 1996, with first-degree murder. The court stated that thereafter, various motions were filed by relators and hearings were continued both by the state and relators. Judge Dupont stated that it was evident that some of the motions filed by relators were never heard or ruled on by the trial court. According to Judge Dupont, on October 28, 2002, relators were reindicted for second-degree murder because the grand jury foreperson for the original indictment had been chosen incorrectly. Judge Dupont points out that this was an issue raised by relators. Judge Dupont noted that the state then had two years from October 28, 2002, to bring relators to trial.
According to Judge Dupont, in February 2003, relators reurged all their prior motions, thereby suspending the running of the statutory time limits. The trial court denied relators' motions on August 15, 2003, and writs were denied by this Court in September 2003. Thus, Judge Dupont set forth that the state had until September 2004 to bring relators to trial.[5] Judge Dupont stated that prior to the tolling of that time limit, on March 3, 2004, relators filed the motion to quash, which is now at issue.
Although Judge Dupont indicated that he feels the matter should have gone to trial long ago, he believes that no prejudice has been shown and that statutory time limits have not been exhausted. Judge Dupont stated that he denied relators' motion to quash on December 7, 2004, and he was of the opinion that relators should be tried prior to December 7, 2005.
Thomas and Dyer escaped from jail on December 25, 1996. Thomas was arrested and returned to jail on December 28, 1996. Dyer was arrested on January 11, 1998, and returned to jail on January 19, 1998. Thus, because of their escape, prescription regarding their cases was interrupted and began anew.[6] The state then had until January 11, 2001, to try Dyer for first-degree murder and until December 28, 1999 to try Thomas. However, both Thomas and Dyer subsequently filed numerous counseled and pro se preliminary motions that suspended prescription until there were rulings on the motions by the trial court. The trial court has yet to rule on many of these motions. Thus, the prescriptive period has been suspended. We note that many of these hearings, which were set for a number of these motions, were continued on motions of the state. Nonetheless, even if continuances sought by the state on relators' motions would have allowed the prescriptive period to begin running again, relators filed several preliminary motions during the time period when prescription could have run. These motions again suspended prescription and extended the prescriptive period for trying relators for first-degree murder.
On October 28, 2002, relators were reindicted with second-degree murder *662 based on a problem with the grand jury that indicted relators with first-degree murder, which was raised in motions to quash filed by relators. According to the information presented to this Court, it does not appear that relators were reindicted by the state in order to extend the prescriptive period. Furthermore, due to the interruptions and suspensions of the prescriptive period caused by relators' escape and relators' filing of numerous preliminary motions, the new indictment for second-degree murder was filed prior to the tolling of the prescriptive period for the first-degree murder charge.
After reindicting relators with second-degree murder, the state had until October 2004 to try relators. However, relators both suspended the prescriptive period by filing motions to quash on March 17, 2003, and March 26, 2003. The motions were denied on August 15, 2003. At that point, the state had at least a year from this ruling to commence the trial.[7] However, relators then sought review of the denial of the motion to quash. On September 23, 2003, this Court denied Thomas's writ application as untimely. On September 26, 2003, this Court stayed Dyer's trial. On March 22, 2004, this Court remanded the matter to the trial court. On May 4, 2004, and on June 10, 2004, both Thomas and Dyer filed motions to quash; thus, again suspending the prescriptive period. On December 7, 2004, the trial court denied the motions to quash. At this point, the state then had at least until December 2005 to try relators. On March 7, 2005, this Court ordered the trial court to quash relators' indictments as the state failed to carry its burden of proof regarding the expiration of the time limitations.
Considering the information now presented to this Court, it appears that the statutory time limitations set forth in La. Code Crim. P. art. 578 have not expired with regard to the second-degree murder charge against relators. Thus, this claim lacks merit.

Claim Number Two:
In their second claim, relators contend that the trial court erred in concluding that they were not denied their right to a speedy trial. Relators argue they have a constitutional right to a speedy trial, which is separate and distinct from their statutory right to a speedy trial. Relators assert that even if the various statutory time limitations have not tolled, their constitutional right to a speedy trial has been violated. Thus, they are entitled to a dismissal of the charges against them. According to relators, the ultimate duty rests on the state to provide the defendant with a speedy trial. The purpose of a speedy trial is to prevent the oppression of citizens. Relators further assert that an unreasonable or oppressive delay by the Court will support a charge that a speedy trial has been denied.
Relators, citing Barker v. Wingo, 407 U.S. 514, 530-33, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972), set forth the primary factors in determining whether a defendant's constitutional right to a speedy trial has been violated: 1) length of delay, 2) reason for the delay, 3) assertion of the right by the defendant, and 4) degree of prejudice.
Relators contend that it has been more than eight years since their initial arrest and indictment, which they claim is an unreasonable length of time to be incarcerated without being tried and unfair to both *663 relators and society. Relators declare that the state cannot explain or justify this unreasonable delay, as the only explanation set forth by the state is that relators had outstanding motions. Relators argue that they clearly set forth their right to a speedy trial. Relators assert that the state and the trial court have neglected their primary duty, which was to ensure that relators were afforded a constitutionally fair and speedy trial. Relators claim that the state has taken no meaningful action to bring this matter to trial in eight years and cannot explain the long delays.
Relators further assert that they have been severely prejudiced by the unreasonable delay, not only because of the extended incarceration, but also because Andre Selders, a key witness for the defense, has died. Relators further declare that another key material witness for the defense has moved and his whereabouts are unknown and that the memories of other defense witnesses have faded.
In its response filed with this Court, the state does concede that the length of delay in this trial is unusual and bears further analysis of these factors. The state asserts that two of the past eight years have been spent litigating the issues of speedy trial and prescription.
As to the second factor set forth in Barker v. Wingo, the state asserts that the bulk of delay was attributable to relators. Both relators escaped from jail and upon their return to jail, filed numerous motions, and requested a number of continuances. The state admits to also seeking continuances and to there being a fifteen-month delay where the trial did not move forward. However, the state points out that in January 2000, the trial court granted the Iberville Parish District Attorney's motion to recuse, and the case was forwarded to the Attorney General's Office for prosecution. The state sets forth that at one point, the trial court was trying to determine if one of relators' attorneys was qualified to defend a death penalty case. The state further claims that delays also were caused by the difficulty in finding enough death-qualified attorneys and because the assistant attorney general handling the case after 2000 had to ask for two continuances based on severe health problems. The state also asserts that defense counsel opposed setting a trial date due to the difficulty in retaining experts from the LSU psychology department, as there was a nine to eleven month backlog in its caseload.
According to the state, this case has been actively litigated since March 2003. The state further asserts that from March 2000 to March 2003, there was steady litigation where relators filed motions to quash, the state sought a new indictment, and scheduling orders set by the court to address pretrial issues were followed by defense notices of intent to file more motions. Thus, the state contends that this period of time should not be weighed against the state because there is no evidence or implication of intentional delay from the state. Therefore, the state asserts that the reasons for the delay in this case are attributable to the complexities of the case, along with relators' actions and inactions.
As to the third prong of Barker v. Wingo, the state claims that relators did not seriously assert their right to a speedy trial until the case moved closer to a trial date. The state contends that both relators previously filed perfunctory motions for a speedy trial, which were not entitled to significant weight.
Finally, as to the fourth factor, the state asserts that relators failed to make any credible allegations of prejudice. The state sets forth that relators were not prejudiced by their incarceration on the instant *664 charges as they also were subject to incarceration for other crimes committed by them. Thus, the state asserts that the incarceration relators endured the last eight years was not solely due to these murder charges against them. Further, the state contends that the mere assertion a witness may be lost is not sufficient to prove prejudice; rather, a defendant must show that the witness is truly unavailable and that the proposed testimony would have been beneficial to the defendant. According to the state, the only allegation of prejudice raised by relators is that Andre Selders, a key material witness for the defense, has died, another witness has moved and his whereabouts are unknown, and another witness's memory has faded. The state complains that relators failed to set forth the testimony these witnesses may have given, what steps they have taken to locate these witnesses, and the names of some of these witnesses. Thus, the state contends that considering all the factors set forth above, relators have not been denied their right to a speedy trial.
Speedy trial jurisprudence is very tangled because of the multiple sources of the right: the U.S. Constitution, the Louisiana Constitution, La.Code Crim. P. art. 578, and La.Code Crim. P. art. 701. The two statutory provisions set forth specific time limits, but the constitutional provisions do not. In determining whether the constitutional right has been violated, no fixed time period is determinative; rather, the conduct of both the prosecution and the defense is weighed in light of the factors set forth in Barker v. Wingo. See also State v. Nowell, 363 So.2d 523, 525-26 (La.1978). In the instant case, relators do not allege that a violation of La.Code Crim. P. art. 701 has occurred.
In analyzing the factors set forth in Barker v. Wingo, we note that the length of the delay serves as the triggering mechanism. Unless there is delay that is presumptively prejudicial, there is no necessity for further inquiry into the other Barker v. Wingo factors. If the delay is presumptively prejudicial, however, the court must then balance the delay together with the three remaining factors. See State v. Cyrex, 97-2520, pp. 7-8 (La.App. 1 Cir. 9/25/98), 746 So.2d 1, 5, writ denied, 98-2692 (La.1/29/99), 736 So.2d 829.
(1) Length of the delay. Excluding the time relators spent free upon their escape in December 1996, and prior to their release by the trial court in April 2005, Thomas has been incarcerated more than eight years and Dyer has been incarcerated approximately seven years. The state concedes, and we conclude, that this inordinate delay is presumptively prejudicial and of sufficient duration to trigger further inquiry into the remaining Barker v. Wingo factors.
(2) Reason for the delay. Relators contend that the state cannot explain or justify this unreasonable delay. Relators set forth that the majority of the times that this matter was before the court for a hearing, the matter was passed to a new date on a motion of the state. Relators contend that there is no compelling or justified excuse for this extended delay.
The state sets forth several reasons for the delay: relators' escape from prison; motions filed by relators that have yet to be ruled on by the trial court; the complexity of the case; relators being reindicted; and continuances filed by the relators and joint continuances filed by the state and the relators. The state further contends that there have been a series of different defense attorneys and trial court judges in this case, which should not be held against the state.
*665 According to the record provided to this Court, relators did escape from prison. Thomas was out for three days and Dyer was out for over a year. Relators also filed numerous motions, some of which were never ruled on by the court. However, the motions filed by relators appear to be legitimately filed motions and not asserted for the purpose of delaying relators' trial.
Nonetheless, according to the minute entries provided to this Court, the state moved to continue hearings regarding this matter on at least twenty occasions. There is no reason given for most of these requests to continue. The trial court continued the matter six times and relators continued the matter at least five times, including a joint motion to continue. Additionally, according to the record, there were extended periods of time where no action was taken by the state on this case, despite filings by relators. As an example, on November 3, 2000, the state amended the indictment. After that action, no action was taken by the state until July 15, 2002, when the state filed an opposition to relators' motion to quash. During that same time period, relators filed five different counseled and pro se motions, including motions to quash, motions for release of bond obligations, and a motion for change of venue. The minutes reflect that these motions were set for hearings, but the minutes fail to reveal whether any hearings were actually held on those hearing dates or whether there was any action by the state or the court on these motions until July 15, 2002.
The state contends that problems with the trial court should not be held against the state; conversely, these same problems should not be held against relators either. Relators have no control over the recusal of the parish district attorney's office or the number of different judges handling this case. Considering the above, it appears that the circumstances of this case suggest a lack of diligence by the prosecution.
(3) Defendants' assertion of the right. Relators contend that they set forth their rights to a speedy trial and complained of the denial of those rights in previously filed motions to quash. The state argues that relators did not seriously assert their rights until the case moved closer to an actual trial date. The state contends that the speedy trial motions filed prior to 2003 were not entitled to significant weight because relators did not seriously challenge their right to a speedy trial therein.
According to the record presented to this Court, Thomas filed motions for a speedy trial on January 17, 1997, June 2, 1998, May 14, 2002, and February 26, 2003. Thomas also filed motions to quash based on this specific issue on May 14, 2003, and May 4, 2004. Dyer filed a motion for a speedy trial on December 12, 1996, a motion for release from bond obligation for failure to timely institute prosecution on May 14, 2002, a motion for release under La.Code Crim. P. art. 701, and motions to quash for these same time limitation issues on March 3, 2003, and on June 10, 2004.
Relators clearly asserted their right to a speedy trial. Although the state contends these were perfunctory motions filed by relators and their "pro forma" assertions were not entitled to significant weight as relators did not seriously challenge their right to a speedy trial until an actual date was near, we observe that the state desires these filings be counted as suspending the prescriptive period when calculating the time limitations. Thus, it appears that relators asserted their rights.
(4) Prejudice to the accused. Relators allege that they have been prejudiced by the length of the delay because of the number of years they have been incarcerated *666 while awaiting trial. Relators also contend that this unreasonable delay has significantly prejudiced the presentation of their case as one key witness, Andre Selders, has died, another witness has moved and cannot be located, and the memories of other witnesses have faded.
The state, however, contends that relators have failed to make any credible allegations of prejudice as both relators were subject to incarceration for charges other than the instant charge against them. According to the state, Dyer was arrested February 18, 1998, for simple burglary and carnal knowledge of juvenile charges committed before the instant murder. Dyer also was given a three-year sentence for his escape from the parish jail. According to the state, Thomas was charged on September 16, 1997, with three counts of aggravated oral sexual battery and one count of crime against nature for crimes he committed against his cellmate while at the Iberville Parish Jail. Thus, the state contends that relators would have spent at least part of the time in jail for other reasons.
The state further contends that the relators failed to make a specific showing regarding the loss of witnesses. According to the state, relators failed to allege to what these witnesses would have testified and only set forth the name of one witness. The state contends that these are general allegations and do not support a claim of prejudice.
The assessment of prejudice weighs three of relators' interests: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility the defense will be impaired. Impairment of a defendant's ability to prepare his case is the most serious form of prejudice normally experienced by an accused whose trial is delayed. The inability of a defendant to adequately prepare his case skews the fairness of the entire system. Barker v. Wingo, 407 U.S. at 532, 92 S.Ct. at 2193. See also State v. Wilson, 95-0613 at p. 6, 672 So.2d at 719.
Except for the three days that Thomas escaped and the little more than one year that Dyer escaped, relators were in jail at least from the time of their indictment in November 1996, until their release upon the order of this Court in April 2005.[8] This amounts to Thomas being held in jail on this charge without being tried for more than eight years. Dyer was held for more than seven years. Although the state argues that relators might have been in jail anyway on a variety of other charges, there is no indication in the state allegations that relators would have been in jail for seven or eight years. Furthermore, there are obvious disadvantages for an accused who cannot obtain his release, which would certainly cause anxiety and concern. The Barker v. Wingo court set forth that when a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. "Imposing those consequences on anyone who has not yet been convicted is serious." 407 U.S. at 533, 92 S.Ct. at 2193.
As to the impairment of relators' defense, Barker v. Wingo specifically stated, "If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because *667 what has been forgotten can rarely be shown." 407 U.S. at 532, 92 S.Ct. at 2193.
According to relators, a key witness, whom they name, has died, another witness has moved and cannot be located, and the memories of other witnesses have faded. Although the state contends that relators have not set forth specifics regarding the possible testimony of these witnesses, we can conclude, even without being given specifics of the lost testimony of these witnesses, that when more than eight years pass between a crime and the trial, there is a high likelihood that a defendant would suffer prejudice as memories fade and witnesses are lost.
After carefully undertaking the requisite balancing process in light of the factors identified in Barker v. Wingo, together with other relevant circumstances peculiar to this case, we find under the totality of circumstances that relators have been deprived of their rights to a speedy trial. We do not find in this specific case that the severe remedy of dismissal of the charges against relators is an overzealous remedy considering the extraordinary circumstances, in particular the inordinate time delays, which have deprived relators of their right to a speedy trial.

DECREE
Therefore, for the above stated reasons, we grant relators' writ application and order the trial court to enter a judgment quashing the charge and discharging relators as to the instant offense only.
WRIT GRANTED; TRIAL COURT ORDERED TO ENTER JUDGMENT QUASHING CHARGES AND DISCHARGING RELATORS.
HUGHES, J., concurs with reasons.
WHIPPLE, J., concurs in part and dissents in part.
HUGHES, J., concurring.
I respectfully concur.
The state contends that there were pending defense motions that were not ruled on that suspended the running of prescription.
The record establishes a pattern whereby the defendants would file motions which were never heard because they were continued by the state or by the court. The defendants would then file a new round of motions, presumably to move things forward. New attorneys would enroll and again file motions. Yet those would again get continued by the state or by the court, thus preventing the time limitations from ever running.
I do not believe that this pattern of state action, by the prosecution and the court, can interrupt the running of prescription. I would find that prescription ran before the October 2002 re-indictment was returned.
WHIPPLE, J., concurring in part and dissenting in part.
While I agree in part with the majority's disposition as to claim number one, I disagree with the majority's conclusion as to claim number two that this prosecution is time-barred after application of Barker v. Wingo factors. As the majority correctly notes, there are extraordinary circumstances present in this case, including the escape from custody by the relators, the existence of numerous motions filed by relators for which no ruling was ever obtained, and the failure of the original trial court to rule on outstanding motions, which failures, in my view, are not attributable to the State. As the successor judge notes in his per curiam, he made the best determinations he could given the circumstances present herein and the condition of the record of these proceedings.
*668 Given the documented and varying reasons for the trial delays herein, including delays directly attributable to the relators' own actions, I agree with the State's assertion that relators are not entitled to an order quashing the prosecution. As the State correctly asserts, the reasons for delay in this case are readily attributable to the complexities of the case, as well as relators' actions and inactions, and the actions of the original trial court in its failure to address outstanding motions.
Thus, I respectfully dissent from the majority's decision to enter judgment quashing the charges and discharging relators. Instead, I would deny relators' writ application and allow these matters to proceed to trial accordingly.
NOTES
[1] James Ross and Carl Nash also were charged by the original indictment. Brandy Jones also was later added to the October 28, 2002, indictment charging relators with second-degree murder.
[2] The trial court's per curiam was filed June 13, 2005.
[3] This timeline is based on the minute entries and filings in the records of both Thomas and Dyer filed with this Court on June 13, 2005, and June 29, 2005.
[4] The minutes do not indicate why a bench warrant was issued as, according to relators and the state, Thomas was in jail at the time.
[5] In September 2003, this Court denied Thomas's writ application and ordered a response and the record for Dyer's writ application. In March 2004, this Court granted in part and denied in part Dyer's writ application.
[6] La.Code Crim. P. art. 579 specifically provides that the time limits for prosecution are interrupted when the defendant flees the state or is absent from his usual abode in the state. The time limits begin to run anew from the date he is captured. See State v. Howard, 325 So.2d 812, 815 (La.1976); State v. Smith, 447 So.2d 565, 568-69 (La.App. 1 Cir.1984).
[7] However, since relators were reindicted in October 2002, the state actually had until October 2004 to commence the trial.
[8] According to relators, they were arrested in August 1996 and were incarcerated since that time.