933 So.2d 788 (2006)
STATE of Louisiana
v.
James Thomas and Percy DYER.
No. 2006-KK-0619.
Supreme Court of Louisiana.
July 11, 2006.
*789 PER CURIAM.
The state's application for review is granted, the decision of the court of appeal is reversed, the judgment of the district court denying the motions to quash filed by respondents Thomas and Dyer is reinstated, and this case is remanded to the district court for further proceedings.
The long and complex procedural history of this case began in November, 1996, when grand jurors for Iberville Parish returned an indictment, three months after commission of the crime, charging respondents and two other defendants with first degree murder in violation of La.R.S. 14:30. Shortly thereafter, respondents upset the course of the prosecution by escaping from the Iberville Parish jail, Thomas *790 for three days and Dyer for 13 months before his recapture in January, 1998, and the case then became engulfed in a tangle of numerous motions filed by various defendants, frequent changes of counsel for respondents, a change in prosecution from the District Attorney's Office for Iberville Parish to the Attorney General's Office, a succession of judges presiding over various aspects of the case, numerous continuances prompted by the state and the defense or by joint motion, and reindictment of the defendants for second degree murder in October, 2002 to cure potential defects in the selection of the foreperson on the 1996 grand jury.
Shortly after the Attorney General's Office entered the case, the state pressed for a trial date in April, 2000. However, respondent Thomas resisted that setting on grounds that the defense needed additional time to prepare for what was still a capital prosecution. The April trial date thereby became a motion hearing date and delay of trial subsequently extended through 2001, bringing speedy trial issues to the forefront when respondents began filing motions in the spring of 2002 for their release from jail. Motions to quash the prosecution followed in March, 2003. On August 15, 2003, the district court, the Honorable Jack C. Marionneaux presiding, conducted a hearing on the motions but declined to quash the prosecution on grounds that it had prescribed. With the assent of the state, Judge Marionneaux set a trial date for September 29, 2003, "rain, shine or if the creek rises." Respondents immediately sought review of the denial of their motions to quash but even as the court of appeal remanded for additional factual findings after staying further proceedings, State v. Dyer, 03-1922 (La.App. 1st Cir.3/22/04)(unpub'd), respondent Thomas renewed his motions to quash in March, 2004, and thereafter respondent Dyer followed with his own motion in June, 2004, raising both statutory and constitutional grounds for barring further prosecution.
These motions were ultimately heard by the Honorable William C. Dupont, who succeeded Judge Marionneaux on the bench and became the sixth judge to preside over the case. On December 7, 2004, Judge Dupont conducted a hearing on the motions and denied them on grounds that the prosecution had not yet prescribed as a matter of Louisiana statutory law. Respondents sought review and in March, 2005, the First Circuit issued a brief order finding that the time limits for trial had expired and that the prosecution had therefore prescribed. State v. Thomas, 04-2805 (La.App. 1st Cir.3/7/05)(unpub'd). On April 18, 2005, at the direction of the court of appeal, Judge Dupont then quashed the indictment and ordered respondents discharged from custody on that charge. On the state's application for review, this Court declined to issue a stay but remanded the case to the court of appeal for full briefing, argument, and opinion. State v. Thomas, 05-1010 (La.4/27/05), 901 So.2d 427. In light of the further proceedings, the First Circuit ultimately found itself in agreement with Judge Dupont that the prosecution had not prescribed as a matter of La.C.Cr.P. art. 578, but concluded that the long delays in the case had nevertheless deprived respondents of their right to a speedy trial in violation of the Sixth Amendment. State v. Thomas, 04-2805 (La.App. 1st Cir.2/15/06), 928 So.2d 649 (Whipple, J., dissenting).
The state's application for review of the First Circuit's decision prompted our independent review of a record that Judge Dupont has accurately described as "confusing to say the least." We are satisfied, as were the courts below, that despite the protracted delays, prosecution of this case *791 has not prescribed as a matter of the time limits imposed by La.C.Cr.P. art. 578. Respondents are therefore not entitled to an irrebuttable presumption of prejudice arising from an untimely prosecution as a matter of statutory time limits placed on trial. See United States v. Marion, 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971)(statutes imposing time limits on trial "provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced.").
We are further satisfied that respondents' Sixth Amendment right to a speedy trial has not been violated although they are clearly entitled to a rebuttable presumption of prejudice because the protracted delays in this case are comparable to the eight and one half year delay between indictment and the arrest of the defendant considered in Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), and found to constitute a denial of the defendant's Sixth Amendment speedy trial right although he had not suffered any oppressive pre-trial incarceration and could not show any specific prejudice. Thus, respondents easily pass the first step of a four-part analysis of Sixth Amendment speedy trial claims set out in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), which takes into account not only the length of the delay (as a threshold step) but also "whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." Doggett, 505 U.S. at 651, 112 S.Ct. at 2690 (citing Barker, 407 U.S. at 530, 92 S.Ct. at 2192).
However, "[t]he flag all litigants seek to capture is the second [Barker] factor," United States v. Loud Hawk, 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986), and in Doggett, the Court attributed the delay to sheer negligence on the part of the government in failing to determine the defendant's whereabouts for eight years, negligence that the Court characterized as "egregious persistence in failing to prosecute" the case. Doggett, 505 U.S. at 657, 112 S.Ct. at 2694. The Court cautioned in this regard that "if the Government had pursued Doggett with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail.... as a matter of course however great the delay, so long as Doggett could not show specific prejudice in his defense." Id., 505 U.S. at 656, 112 S.Ct. at 2693. That was so because the Court "attach[ed] great weight to such considerations [as the government's need to collect witnesses and oppose defendant's pretrial motions] when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." Id. By contrast, a showing that the government has "intentionally held back in its prosecution... to gain some impermissible advantage at trial .... that official bad faith in causing delay" weighs heavily against the government. Doggett, 505 U.S. at 656, 112 S.Ct. at 2693 (citing Barker, 407 U.S at 531, 92 S.Ct. at 2192).
In the present case, the delays appear to have resulted not from a bad faith effort by the state to secure tactical advantage over respondents or from the state's negligence in failing to press forward with the case but from the initial complexities of trying a capital case and the extensive pre-trial motion practice conducted by respondents who have been represented by a succession of attorneys practicing before a succession of judges presiding over the case. While various state's continuances unquestionably added to the delay, the record *792 before this Court supports a finding that the state has been reasonably diligent in prosecuting the case which for the last three years has been at a standstill, not as a result of a persistent failure of the state to bring this case to trial, but from necessity while the court of appeal and this Court have grappled with the continuing controversy over respondents' assertion of their speedy trial rights. Respondents initiated this appellate process by seeking review of Judge Marionneaux's order in August, 2003, and they may not hold against the state its determination to see that process through to the end, especially now that they have been discharged from custody on the offense. Cf. Loud Hawk, 474 U.S. at 316, 106 S.Ct. at 657 ("A defendant who resorts to an interlocutory appeal normally should not be able upon return to the district court to reap the reward of dismissal for failure to receive a speedy trial.").
While respondents claim that they have lost two important witnesses in the long course of the proceedings, one whom they identify by name and claim has died in the interim, they have not provided any details as to why those witnesses are material to their defense. See State v. Malvo, 357 So.2d 1084, 1087 (La.1978)("It is significant that it was not shown that the `material' witness who was no longer available for trial in fact had testimony which would aid defendant's case."). Thus, respondents have failed to show specific prejudice to their defense arising out of the long delay. Moreover, the delays in the present case do not necessarily inure solely to the detriment of respondents because "time can tilt the case against either side ... [and] one cannot generally be sure which [side] it has prejudiced more severely." Doggett, 505 U.S. at 655, 112 S.Ct. at 2693 (citations omitted).
Thus, notwithstanding respondents' continual assertion of their speedy trial rights since 2002, and even assuming that they endured their long pre-trial incarceration solely as a result of the present charge and not, as the state alleges, partially as the result of other charges filed against them, including an escape charge against respondent Dyer, we find that a violation of respondents' Sixth Amendment right to a speedy trial has yet to occur. However, time is clearly now of the essence, for no matter how responsibility is apportioned, continued delays in the present case risk the loss of witnesses and the fading of memories to an extent that may also place at risk trial as a reliable vehicle for determining whether respondents committed the crime charged against them.
Accordingly, we reverse the decision of the court of appeal, vacate the order entered by Judge Dupont quashing the indictment on April 18, 2005 at the direction of the court of appeal, reinstate Judge Dupont's ruling of December 7, 2004, denying respondents' motions to quash, and remand this case to the district court for further proceedings consistent with the views expressed herein and for resolution of this case as expeditiously as possible. Respondents' custody status on the present charge pending trial is a matter addressed to the district court in the first instance.